COMMONWEALTH vs. JAMES PAPPAS.

Middlesex. May 5, 1981. — August 21, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Motor Vehicle,* Citation for violation of motor vehicle law. *Practice, Criminal,* Citation for violation of motor vehicle law.

Complaints charging a defendant with negligent motor vehicle homicide, operating a motor vehicle while under the influence of intoxicating liquor, and driving to endanger should not have been dismissed because of the failure of police officers to issue a citation at the time and place of the violation as required by G. L. c. 90C, § 2, where the four and one-half hour delay between the time of the accident and the issuance of the citation was caused almost entirely by the need to clear the scene, investigate the cause of the accident, and determine the nature of the violations. [430-433]

COMPLAINTS received and sworn to in the Second Eastern Middlesex Division of the District Court Department on June 24, 1980.

A motion to dismiss was heard by *Doyle,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Robert M. Raciti,* Assistant District Attorney, for the Commonwealth.

*Willie J. Davis* for the defendant.

HENNESSEY, C.J. On September 3, 1980, a District Court judge dismissed complaints against James Pappas charging negligent motor vehicle homicide, operating a motor vehicle while under the influence of intoxicating liquor, and driving to endanger. The judge dismissed the complaints because he concluded that the failure of police officers to issue a citation at the time and place of the violation was contrary to G. L. c. 90C, § 2. The Commonwealth appealed

to the Appeals Court and we transferred the case to this court on our own motion. We reverse.

In support of the defendant's motions to dismiss the complaints, evidence was presented to the judge which tended to establish the following facts. At approximately 3 P.M. on June 23, 1980, the defendant, a retired Waltham police officer, was involved in a single vehicle accident in Waltham in which a pedestrian was seriously injured. Within a few minutes, two Waltham police patrolmen, whose duties included traffic law enforcement and to whom citation books had been issued, arrived at the scene along with ambulance officers who transported the injured pedestrian to Waltham Hospital. The two patrolmen arranged for the removal of the defendant's motor vehicle from the scene and for the resumption of the orderly flow of traffic. Shortly thereafter, one of the patrolmen transported the defendant to the nearby home of the defendant's sister and then returned to the scene of the accident.[1]

At 3:30 P.M., the same day, a Waltham police lieutenant was designated "Temporary Officer in Charge of the Traffic Division" to investigate the accident which had taken place some thirty minutes earlier. When the lieutenant arrived on the scene at approximately 3:35 P.M., the two patrolmen who had first arrived on the scene did not know that the accident victim had been pronounced dead on arrival at the hospital at 3:11 P.M. Although the lieutenant knew when he arrived that the accident victim had died, no evidence available at the scene — other than a damaged fence indicating that the defendant's motor vehicle had tra-

---

[1] As the defendant recalls the facts, the patrolmen offered to drive him to the hospital or to his home, but he requested to be driven elsewhere. Compliance by one of the patrolmen, while courteous, arguably reflects poor judgment on the patrolman's part. However, contrary to the trial judge, we do not read this proffered assistance as indicating that the patrolmen were no longer burdened by their responsibilities at the accident scene. The record clearly indicates that more important matters — such as the further investigation of the cause of the accident — remained at hand.

versed a sidewalk — suggested that the defendant had been driving so as to endanger the lives and safety of the public. Both patrolmen at the scene advised the lieutenant that in their opinion the defendant was not under the influence of alcohol, although "he had had a couple of pops."

The lieutenant, accompanied by a police sergeant and the two patrolmen, proceeded to the defendant's sister's home, arriving at approximately 3:40 P.M. The defendant was sitting at a table where, according to his affidavit, he had consumed "half a dozen shots" of vodka. The lieutenant observed no alcoholic beverages or glasses in the area. The defendant's slurred speech, as well as other behavior, caused the lieutenant to form an opinion that the defendant was under the influence of alcohol. The two patrolmen stated to the lieutenant, "He sure got awfully drunk awfully fast." The defendant was advised of his rights and asked to accompany the officers to the police station,[2] where he took a breathalyzer test which indicated a blood alcohol content of nineteen one hundredths.[3] The defendant was released on bail and later, at about 7:30 P.M. the same day, he was given a traffic citation for "operating under the influence of liquor," "homicide by motor vehicle," and "operating so as to endanger."

General Laws c. 90C, § 2, as amended, requires a police officer assigned to traffic enforcement duty to "record the occurrence of automobile law violations upon a citation, filling out the citation and each copy thereof as soon as possible and as completely as possible . . . . A failure to give the

---

[2] According to the defendant's affidavit, he was told that he was under arrest. Such an arrest would appear to eliminate the need for prompt issuance of a citation for driving while under the influence of alcohol. See G. L. c. 90, § 21; Commonwealth v. Shea, 356 Mass. 358, 360 (1969). We need not reach the issue, however, since we decide that the defense offered by G. L. c. 90C, § 2, is not available to the defendant in the circumstances presented in this case.

[3] If the percentage of alcohol in an individual's blood is ten one hundredths or more, the individual is presumed to be under the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (e).

original of the citation to the offender at the time and place of the violation shall constitute a defense in any trial for such offense, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the offender or where the court finds that some circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure." Two purposes underlie the citation requirements of G. L. c. 90C, § 2. The first purpose is apparent from the common name of the statute, the "no-fix" law. The nature of traffic citations renders them uniquely suited to manipulation and misuse, and G. L. c. 90C, § 2, is intended to prevent such abuses by eliminating unreasonable or unnecessary delay. See 1965 Senate Doc. No. 839, at 2. The second purpose served by the statute is to afford prompt and definite notice of the nature of the alleged offense to the putative violator. "The statute . . . is designed to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs." *Commonwealth* v. *Gorman*, 356 Mass. 355, 357-358 (1969). Neither of these statutory purposes is furthered by the action of the judge below.

The susceptibility of "traffic tickets" to unequal and arbitrary disposition at the hands of traffic officers, and the requirement of prompt notice to the offender, reflect the normally fleeting and nonserious nature of most traffic infractions. *Commonwealth* v. *Giannino*, 371 Mass. 700, 703 (1977). *Commonwealth* v. *Mullins*, 367 Mass. 733, 736 (1975). *Commonwealth* v. *Boos*, 357 Mass. 68, 70 (1970). The risk that a putative defendant will remain unaware of a transient traffic offense and will be unprepared to defend against it unless the incident is "called immediately to [his] attention" has little relevance when applied to more serious crimes. See *Commonwealth* v. *Giannino, supra* at 703; *Commonwealth* v. *Gorman, supra* at 358. The facts of the case at bar aptly demonstrate the issue. It is inconceivable that the defendant would be unaware of the seriousness of a

situation in which his vehicle had crossed the center line of a public street and struck a pedestrian. It is equally unlikely in such circumstances that police officers responding at the scene would regard this as a minor accident in which their discretion concerning whether to issue a citation would be absolute and unchecked.

Moreover, the statute itself qualifies the defense it offers by providing that such a defense shall not be available when "additional time was reasonably necessary to determine the nature of the violation." G. L. c. 90C, § 2. It may be inferred from the record that an atmosphere of crisis and confusion prevailed when the two patrolmen arrived at the scene simultaneously with the ambulance and preliminarily decided that the defendant, although he had been drinking, appeared not to be under the influence of alcohol. The patrolmen were also engaged in restoring order and the free flow of traffic. Furthermore, since there was some evidence that the defendant had indeed been drinking before the accident, the police were well-advised to investigate the incident further. Such exigencies, as well as the uncertain condition of the victim and the necessity to collect additional information needed to determine the nature of the violation, justify the delay which in this case was four and one-half hours. The judge found that the delay in the issuance of the citation was not reasonably necessary. While certain actions of one of the patrolmen might be read to offer support for this proposition, see note 1, supra, we conclude that as a matter of law, the delay here in issuing a citation to a driver involved in a fatal accident was "reasonably necessary" where the delay was caused almost entirely by the need to clear the scene, investigate the cause of the accident, and determine the nature of the violations. See G. L. c. 90C, § 2. As well, these causes of delay are "circumstances" that justify the failure to issue the citation, and they are clearly consistent with the declared purpose of G. L. c. 90C, § 2 — "to cause violators of automobile law to be brought uniformly to justice." The statute must be read to permit police officers an opportunity to exercise

reasoned and informed judgment in light of the particular circumstances in determining whether a violation has occurred. The statutory purposes would not be served by, in effect, requiring police officers to write citations first and to ask questions afterward, at risk of mandatory dismissals of serious charges caused by momentary delays in issuing citations. For these reasons we conclude that it was error for the judge below to dismiss the charges and therefore reverse his order.

*So ordered.*