COMMONWEALTH vs. DONALD J. PROVOST.

Worcester. September 10, 1981. — October 5, 1981.

Present: HALE, C.J., BROWN, & GREANEY, JJ.

*Motor Vehicle*, Citation for violation of motor vehicle law. *Practice, Criminal*, Citation for violation of motor vehicle law.

A motion to dismiss complaints charging the defendant with certain motor vehicle violations on the ground that the State police officer who investigated the accident had failed to issue citations under G. L. c. 90C, § 2, until twenty-seven days after the violations occurred was properly denied where the delay was justified by the seriousness of the possible charges and the officer's need to gather and analyze information concerning how the accident, in which three people had died, had occurred. [482-485]

COMPLAINTS received and sworn to in the Central Worcester Division of the District Court Department on January 4, 1980.

Upon appeal for trial by jury, a motion to dismiss was heard by *George, J.*, and the cases were tried before *Carroll, J.*

*Richard J. Pentland* for the defendant.

*Beth H. Saltzman*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. After trial before a jury of six in a District Court, the defendant was convicted of three counts of vehicular homicide, G. L. c. 90, § 24G, and one count each of driving under the influence of intoxicating liquor, G. L. c. 90, § 24(1)(a), driving to endanger, G. L. c. 90, § 24(2)(a), and failing to stay to the right of the road, G. L. c. 89, § 1. Prior to trial, the defendant moved to dismiss all six complaints on the ground that the State police officer who investigated the accident had failed to issue citations

under G. L. c. 90C, § 2, until twenty-seven days after the violations occurred. A judge denied that motion, and the propriety of that ruling is the sole question presented by this appeal.

General Laws c. 90C, § 2, as amended by St. 1968, c. 725, § 2, requires an officer assigned to traffic duty to record motor vehicle violations "upon a citation . . . as soon as possible and as completely as possible . . . " thereafter. It further provides that a "failure to give the original of the citation to the offender at the time and place of the violation shall constitute a defense in any trial for such offense, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the offender or where the court finds that some circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure." Since the citations here were not issued at the time of the violations, we examine the circumstances to determine whether the twenty-seven day delay was justified under any of the statutory exceptions.

The evidence presented to the judge tended to establish the following facts. On December 8, 1979, at approximately 11:00 P.M., two vehicles were involved in a collision on Route 122 in Rutland. Upon arriving at the scene, the officer learned that the sole occupant of one vehicle, a Ford van, had been killed. He also determined that the defendant was the driver of the other vehicle, a Chevrolet sedan, and that the defendant had a "strong odor of alcohol on his breath."

While at the scene, the officer commenced his investigation of the collision. This included the measurement of skid marks, which were found on the "wrong side of the road," and several gouges which appeared in the surface of the southbound lane. The officer also noted the positions in which the two vehicles had come to rest after the collision. Other than the occupants of the vehicles, there were no witnesses to the accident.

Later that evening, the officer determined the defendant's identity and learned that two of the three passengers in the defendant's car had also died. The officer sought to speak with the defendant at the hospital but was advised that he was in critical condition and that it would be several days before any interview would be possible. On December 12, 1979, the officer again sought to speak with the defendant, and with the surviving passenger of the defendant's car, but was informed that both were still under intensive care and would be unable to make any statement for several weeks.

On December 21, 1979, the officer called the hospital and received permission to talk to both men. The officer then attempted to interview the defendant and the passenger, but neither had any recollection of the accident or the events which preceded it. On December 26, 1979, the officer spoke with the defendant's doctor but was advised that his condition was unchanged from the time of the previous interviews and that he still suffered total amnesia concerning the accident.

On December 28, 1979, the twentieth day after the accident, the officer spoke with one Debra Lamb, the sister of the person who had been driving the other vehicle in the accident. She told him that her brother had driven her to Warwick between 9:30 and 10:30 P.M. that evening. The officer testified that since Warwick is north of Rutland, the scene of the accident, this information "confirmed" that the van had been traveling south on Route 122, although he had "suspected" as much, and was not "surprised" by this information.

Following the interview with Lamb, the officer was off-duty for a week. During that time, however, he "put the whole investigation together," compiling all the information he had gathered, and making diagrams of the collision as he had reconstructed it. The officer concluded that the defendant had been traveling in a northerly direction, that his car had crossed the dividing line and struck the van in the southbound lane, and that the defendant was therefore

at fault in the accident. Based on this conclusion, the officer issued citations for the violations involved here on January 4, 1980, the twenty-seventh day after the accident.

The defendant correctly points out that since he was never placed under arrest, G. L. c. 90C, § 2, required the issuance of citations, *Commonwealth* v. *Gorman,* 356 Mass. 355, 357-358 (1969), and that since such citations were not issued at the time of the violations, it was the Commonwealth's burden on the motion to dismiss "to establish that one of the exceptions in § 2 justified the prosecution[s] . . . ." *Commonwealth* v. *Mullins,* 367 Mass. 733, 734-735 (1975). In this context, we first consider whether "additional time was reasonably necessary" for the proper investigation of the accident.

The defendant views the quoted exception as inapplicable here, arguing that the officer had sufficient information to issue citations by the end of the night of the accident and that his subsequent investigation, including the interview with Lamb, was unnecessary. We disagree. Based on the facts and testimony summarized above, we do not think that the officer's measurements and observations at the scene permitted a proper reconstruction of the accident. From that evidence, the officer could not even ascertain with certainty which vehicle had been traveling in which lane, much less how the accident actually occurred, or who, if anyone, was at fault.

Thus, although the officer apparently formed a tentative theory regarding these questions, and also learned the identity of the defendant, the information initially available left legitimate doubt as to the "identity of the *offender*" (emphasis supplied), as well as the "nature of the violation[s]" which any such offender had committed. In these circumstances, and in view of the seriousness of the possible charges involved, we think that a prudent investigating officer could reasonably have deferred any final conclusion regarding the cause of the collision pending more definite information of the sort which was, in fact, later received from

Lamb.[1]  Therefore, at least as to the twenty-day period pre-
ceding the officer's interview with Lamb, we conclude that
the delay in issuing the citations was "reasonably necessary"
for the proper investigation of the accident.

The defendant argues, however, that no adequate justifi-
cation was shown for the additional seven-day delay follow-
ing the interview with Lamb.  He points out that in *Com-
monwealth* v. *Pappas,* 384 Mass. 428 (1981), the most re-
cent case on this subject (in which convictions for offenses
similar to these were upheld), the defendant was arrested
only forty minutes after the accident occurred and given a
citation seven hours later.  He also points out that no appel-
late decision has yet condoned a twenty-seven day delay in
the issuance of a citation, and that *Commonwealth* v. *Mul-
lins,* 367 Mass. 733 (1975), held that a complaint should
have been dismissed because the delivery of the citation
nineteen days after the offense was not supported by any
circumstances in justification.

The several purposes of G. L. c. 90C, commonly known
as the "no-fix" law, were reviewed in *Pappas.*  There, the
court pointed out that there are two concerns which under-
lie the present citation requirements:  (1) to prevent "ma-
nipulation" of traffic tickets, and (2) to ensure "prompt and
definite notice" of the violation to the offender.  384 Mass.
at 431.  As to the latter concern, however, the court held
that "[t]he risk that a putative defendant will remain
unaware of a transient traffic offence and will be unpre-
pared to defend against it . . . *has little relevance when ap-
plied to more serious crimes.*  See *Commonwealth* v. *Gian-
nino,* [371 Mass. 700, 703-704 (1977)]; *Commonwealth* v.
*Gorman, supra* at 358 . . . .  It is inconceivable that [a]
defendant would be unaware of the seriousness of a

---

[1] Although the officer testified that he "suspected" that the van had
been traveling south and that this fact, once established, led him to con-
clude that the defendant had been at fault in allowing his car to cross into
the southbound lane, he also testified that it was not until he spoke with
Lamb that he "knew it" with any certainty.

situation in which his vehicle had crossed the center line of a public street and struck a pedestrian" (or, as here, another vehicle). 384 Mass. at 431-432 (emphasis supplied). Likewise, as to the former concern, the court found it "equally unlikely in such circumstances that police officers responding at the scene would regard this as a minor accident in which their discretion concerning whether to issue a citation would be absolute and unchecked." *Id.* at 432. Basically, "[t]he statute must be read to permit police officers an opportunity to exercise reasoned and informed judgment in light of the particular circumstances in determining whether a violation has occurred. The statutory purposes would not be served by, in effect, requiring police officers to write citations first and to ask questions afterward, at risk of mandatory dismissals of serious charges . . . ." *Id.* at 432-433.

We do not think it useful to engage in a comparison of the time periods involved in the different cases under the statute. Each case must be decided on its own peculiar facts. Nor do we see anything in the facts of the *Mullins* case which would tend to control the result here.[2] There is simply no comparability between the investigation required by a serious automobile accident to which there are no eyewitnesses and in which multiple deaths are involved, and the virtually instantaneous recognition of a violation that occurs in a garden variety motor vehicle offense such as speeding. In the former, careful and painstaking accident reconstruction is often necessary before the police can obtain the root facts upon which to base a reasoned decision whether citations should be issued and criminal complaints sought.

---

[2] In *Mullins* the delay in issuing a citation for speeding was occasioned by the police officer's belief that a registry inspector who also observed the violation had issued the citation. None of the three exceptions to § 2 was applicable. First, the defendant was stopped at the scene of the accident and his identity established beyond question by the police officer and the registry inspector. Second, the Commonwealth offered no facts to support a finding that additional time was reasonably necessary to determine the nature of the violation. Third, the only evidence why no citation was issued at the scene "at best [showed] an unexplained mistake." 367 Mass. at 736.

We are aware that the seven-day delay at issue here is substantially longer than the delay present in *Pappas*.[3] We are also mindful, however, of the express purpose stated by the statute, "namely, to cause violators of automobile laws to be brought uniformly to justice." We think it would be inconsistent with that purpose to hold that charges as serious as the present must be dismissed because of a one-week delay occasioned by a need to analyze and integrate information already collected, rather than a need to collect additional information.[4] See *Commonwealth* v. *Drew*, 11 Mass. App. Ct. 517, 523 (1981).

For these reasons, the defendant's motion to dismiss the complaints against him was properly denied.

*Judgments affirmed.*

---

[3] Although "the defense made available by § 2 is not limited to those who have been prejudiced by delay," *Commonwealth* v. *Mullins*, 367 Mass. at 735, we note that there is no evidence that the defendant was prejudiced by the additional seven-day delay here.

[4] The preparation of a diagram and other investigative materials might also have importance if the defendant chose to exercise his right to seek a hearing prior to the issuance of process. See G. L. c. 90C, § 1, as amended by St. 1975, c. 418; *Commonwealth* v. *Wade*, 372 Mass. 91, 93 n.3 (1977).