Neel, J.
Defendant Glen St. Hilaire is charged with operating under the influence (fifth offense), and operating under the influence resulting in serious bodily injury. He moves to suppress the introduction into evidence of any results of blood testing performed at Marlborough Hospital on July 23, 1994 on blood drawn from him involuntarily. He also moves to dismiss the indictment charging operating under the influence, on the basis that the police failed timely to serve upon him a citation, as required by G.L.c. 90C s.2.
The motions were heard May 10, 1995. For the reasons set forth below, the motions are denied.
FINDINGS
The Commonwealth presented the testimony of Wayne Chin, M.D., and Officer Gregory Brewster of the Marlborough Police Department. On the basis of the credible evidence presented and inferences reasonably drawn therefrom, and solely for purposes of these motions, I find as follows.
On July 2, 1994, on Route 20 in Marlborough, a 1988 Camaro driven by defendant collided headon with a 1988 Oldsmobile. In the Oldsmobile were Claudette and Eugene Fisher, described by Officer Brewster as “elderly.” Defendant had a passenger, Abdul Karim. Police, fire and emergency personnel were summoned to the scene. The first to arrive was Officer Gregory Brewster, a veteran police officer for the town of Marlborough. Officer Brewster observed the two heavily damaged vehicles, persons with fire extinguishers, fire and ambulance personnel, several persons standing in the road, and the Fishers, both injured. Officer Brewster then administered first aid to Claudette Fisher, who was lying on the pavement and had sustained serious facial injuries.
After medical personnel arrived, Officer Brewster began to investigate the accident scene, together with several other officers. He observed the interior of defendant’s car, which was heavily damaged, and which indicated to him that defendant had hit the car’s steering wheel and dash with great force. He also saw a beer can on the driver’s side floor, and multiple cans of beer in the back seat.
Officer Brewster’s attention was then drawn to the defendant, who he observed thrashing about while attendants attempted to put him on a stretcher. A *129 medical technician informed Officer Brewster that defendant may have suffered neck injuries, that he should be evaluated and treated, and that he was being uncooperative. The officer observed that defendant had a neck brace on, smelled a strong odor of alcohol on defendant’s breath, and reasonably suspected that he was intoxicated.
In view of defendant’s potentially serious injuries, his refusal to be treated, his lack of physical restraint and his intoxication, Officer Brewster concluded that the defendant was in danger and unable to care for himself, and therefore placed defendant in protective custody. The officer handcuffed defendant (hands in front) in accordance with department regulations, and directed that he be transported by ambulance to Marlborough Hospital.
When he arrived at the hospital emergency room, defendant was examined by Wayne Chin, M.D. Dr. Chin was informed that defendant had potentially serious injuries resulting from a motor vehicle accident, and was concerned initially about possible head or abdominal injuries. Dr. Chin observed that defendant was clearly intoxicated, was not cooperative, and was not speaking sensibly. Defendant was agitated and was writhing about, which was unusual in a motor vehicle accident case. He was verbally abusive, swearing, spitting, and threatening to sue the hospital.
Based on the information he had about the accident and on the defendant’s appearance and behavior when examined, Dr. Chin reasonably suspected that defendant might have suffered subdural or epidural brain injury, or diffuse axonal injury (swelling of the brain). He was also concerned about possible internal bleeding. Each of these can be fatal without surgical intervention. The brain injuries require that the patient be kept still, particularly that the neck be controlled, to prevent paralysis. Early on, defendant removed a neckbrace; it was reapplied while defendant was physically restrained by hospital personnel, with the assistance of Office Brewster, at the request of emergency room personnel. Officer Brewster also assisted while a face shield was put on defendant to prevent his spitting.
Dr. Chin explained to defendant his concern that defendant might have lifethreatening injuries. Defendant responded to this, and to Officer Brewster’s attempt to question him, with obscenities.
Hospital personnel placed defendant in four-point restraints. Because of defendant’s thrashing, Dr. Chin also prescribed Haldol, an antipsychotic drug. After several doses, defendant was quiet.
Upon further examination of defendant, Dr. Chin found abrasions to defendant’s forehead, bruises to his chest, and lacerations to his left knee. In accordance with standard emergency room protocol for a motor vehicle accident victim with multiorgan involvement (head and chest), Dr. Chin ordered that blood be drawn and analyzed. He needed at least two types of information: the blood count (to tell whether defendant had lost blood, indicating internal bleeding): and presence of alcohol or drugs (to determine to what degree defendant’s behavior was attributable to those substances, and to what degree it was attributable to head injury).
The doctor’s decision to order blood work was not requested, influenced by, or participated in, by any police personnel. Dr. Chin was unaware of defendant’s protective custody status. Officer Brewster did not witness blood being taken from defendant, nor did any police personnel participate in that procedure. Officer Brewster inquired of hospital personnel, after the fact, whether blood had been drawn from defendant.
In Dr. Chin’s view, based on the defendant’s trauma, condition and behavior, defendant was not competent to decide whether to allow his blood to be drawn. Because time was of the essence, and in accordance with his training, Dr. Chin made the decision.
After defendant was sedated and asleep, Officer Brewster or Sgt. Valíante of the Marlborough police ordered him released from protective custody.
That evening, after Officer Brewster returned to the station from the hospital, Sgt. Valíante prepared a citation to be served on defendant for operating under the influence. After reviewing the defendant’s Board of Probation record, the officers were uncertain whether the new charge would be defendant’s fourth or fifth OUI charge. After speaking with the Clerk Magistrate that evening, the officers were still uncertain, and determined that they would not be able to clear up the uncertainty until the next day (a Monday), when they would be able to speak to the Probation Department. In addition, the defendant was by this time sedated and unconscious at the hospital. Accordingly, the citation was mailed to defendant the next day.
In view of the heavy damage to the defendant’s and the Fishers’ vehicles: the serious injuries to Claudette Fisher and Abdul Karim (who was “lifeflighted” to University of Massachusetts Medical Center after treatment at Marlborough Hospital): the presence of numerous beer cans in defendant’s vehicle; the fact that defendant was conscious at the accident scene and likely observed it and the fire, police, and emergency medical personnel who were present; and the defendant’s previous convictions for OUI and his refusal to cooperate with police or medical personnel, I find that defendant was aware of the seriousness of the accident.
DISCUSSION
1. MOTION TO DISMISS OR TO SUPPRESS BLOOD TEST
Defendant bases his motion on numerous grounds; each is addressed below.
*130 A.Due Process and Unreasonable Search and Seizure
The Fourth Amendment of the United States Constitution and article 14 of the Massachusetts Declaration of Rights, and the accompanying rule of exclusion, apply only to government action. Commonwealth v. Leone, 386 Mass. 329, 333 (1982). Evidence discovered or seized by private parties is admissible without regard to the methods used or the existence of probable cause, unless state officials have instigated or participated in the search. Id.; see also Commonwealth v. Brzezinski, 405 Mass. 401, 405 (1989) (detective did not direct informant to return to apartment or initiate discussion of return to apartment). The mere fact that evidence seized by a private citizen is later turned over to the police is insufficient to implicate state action. District Attorney for Plymouth Dist v. Coffey, 386 Mass. 218, 221 (1982). However, the Fourth Amendment does prohibit unreasonable intrusions by private individuals who are acting as government instruments or agents. United States v. Reed, 15 F.3d 928, 931 (9th Cir. 1994) (citing Coolidge v. New Hampshire, 403 U.S. 443, 487).
The defendant has the burden of showing government agency, see Reed, 15 F.3d at 931, by showing 1) that the government knew of and acquiesced in the intrusion, and 2) that the private party’s purpose was to assist law enforcement efforts, United States v. McAllister, 18 F.3d 1412, 14171418 (7th Cir. 1994). Mere knowledge by a police officer that a private individual may conduct a search is insufficient if the officer did not direct or encourage the search. Commonwealth v. Richmond, 379 Mass. 557, 561 (1980); see also Reed, 15 F.3d at 932 (private searches in presence of police officers upheld if searcher had motive other than law enforcement). Evidence of the private searcher’s motive may include whether the police or other state officials made promises to elicit the individual’s help or offered or asked anything of that individual. See Brzezinski, 405 Mass. at 405; see also Thomas v. Cox, 708 F.2d 132, 133 n.4 (4th Cir. 1983) (absence of reward supports conclusion there was no quid pro quo). However, even where a private party intended to assist law enforcement, the private party does not become a government agent so long as there is a legitimate independent motivation for the invasion. McAllister, 18 F.3d at 1418; United States v. Chukwubike, 956 F.2d 209, 212 (9th Cir.), cert. denied, 112 S.Ct. 2288 (1992) (fact that doctors immediately turned over evidence did not contradict testimony they acted for medical reasons).
In defendant’s case, the police did not request or direct that the blood test be performed. See Commonwealth v. Russo, 30 Mass.App.Ct. 923, 925 (1991). While they did place defendant in protective custody and help hospital personnel restrain defendant, they did so for the purpose of ensuring that he receive medical treatment, and not for the purpose of drawing the blood sample. The police neither knew whether a blood test would be performed at the time they participated in the restraint of defendant, nor assisted in the restraint of defendant in order to encourage the extraction of the blood or in exchange for the hospital’s assistance. See Brzezinski, 405 Mass. at 405; Cox, 708 F.2d at 133 n.4. Therefore, the evidence fails to support a conclusion that the government directly caused the seizure of defendant’s blood. See Russo, 30 Mass.App.Ct. at 925.[1]
The evidence likewise fails to support any argument that Dr. Chin and his staff were acting as government agents. Indeed, the court has found that the police did not know of and acquiesce in the blood test, so the first requirement for agency is not met. See McAllister, 18 F.3d at 14171418. Even assuming that the officers had reason to believe that blood would be taken, the issue of government agency depends as well on the motivation of the medical personnel. See Chukwubike, 956 F.2d at 212; c.f. United States v. Attson, 900 F.2d 1427, 1433 (9th Cir.), cert. denied, 498 U.S. 961 (1990) (blood drawn by government actor not seizure if purpose was medical rather than investigatory). In this case Dr. Chin, who ordered the blood test, did so for his own diagnostic purposes, given defendant’s specific medical circumstances, and in accordance with standard procedures for treatment of the defendant’s suspected medical condition. See Chukwubike, 956 F.2d at 212. The doctor was unaware of defendant’s protective custody status and made his decision based entirely upon defendant’s medical condition, without consideration for the continued presence of the police. See Richmond, 379 Mass. at 561 (mother acting solely in the interests of her daughter and not on behalf of the police); Chukwubike, 956 F.2d at 212.
Because the actions of the doctor and hospital cannot be viewed as State action, the evidence derived from the blood test will not be suppressed on the basis of violation of either the Fourth Amendment or article 14 of the Massachusetts Declaration of Rights.
B. G.L.c. Ill, §70E
Defendant asserts that “police ... pinned him down so blood could be drawn,” thereby “participating with the hospital staff in violating the [patient’s right under G.L.c. Ill, §70E(h) to refuse treatment],” and elevating the matter to “constitutional proportions.” (Defendant’s Memorandum at 9.) Contrary to defendant’s assertion, the court has found no credible evidence that police were present when blood was drawn. Moreover, defendant fails to say what constitutional right has been infringed upon, moving instead directly to a discussion of remedies. The court will not speculate upon the constitutional grounds being asserted. In any event, the alleged factual basis not having been established, the blood test will not be suppressed on the basis of G.L.c. Ill, §70E(h).
C. Right of Privacy
The hospital records statute, G.L.c. 233, §79, permits the admission of blood test results for the purpose of showing that a criminal defendant had consumed *131 intoxicating liquor shortly before events leading to a charge of operating under the influence. Commonwealth v. Dube, 413 Mass. 570, 572, 574 (1992). The confidentiality of records provided by G.L.c. Ill, §70E(b) applies only to the extent provided by law. Id. at 572. Contrary to defendant’s claim, G.L.c. Ill, §70E(b) does not provide him an unqualified right to privacy in his blood alcohol test results. Id.-, Commonwealth v. Riley, 22 Mass.App.Ct. 698, 700 (1986) (blood alcohol test admitted where ordered by doctor to distinguish between head injury and inebriation). Nor does the right to privacy statute, G.L.c. 214, §1B, prohibit admission of lawfully administered[2] blood test results in criminal prosecutions under G.L.c. 90, §24 for driving while intoxicated. See Dube, 413 Mass. at 572, 57475. Finally, defendant has cited no authority construing the United States Constitution’s right to privacy as a bar to admissibility of test results in the circumstances of this case.
Because defendant does not have a privacy interest in his blood test results under G.L.c. 214, §1B, G.L.c. Ill, §70E(b) or the United States Constitution, with regard to criminal prosecution, the results will not be suppressed as an unreasonable, substantial and serious interference with his right of privacy.
D.Right Against Selflncrimination
The privilege against selfincrimination under the Fifth Amendment of the United States Constitution does not make the results of involuntary blood tests inadmissible as evidence in criminal prosecutions. Schmerber v. California, 384 U.S. 757, 765 (1965); Commonwealth v. Downey, 407 Mass. 472,476 n.6 (1990). The privilege is a bar against compelling “communications” and “testimony,” but not to compulsion which makes a suspect or accused the source of “real or physical evidence.” Schmerber, 384 U.S. at 764. Similarly, article XII of the Massachusetts Declaration of Rights protects only against the compulsion of communications or testimony and not against the production of real or physical evidence, including blood samples. Commonwealth v. Lydon, 413 Mass. 309, 314 (1992); Commonwealth v. Brennan, 386 Mass. 772, 783 (1982).
Defendant states that the court’s Fifth Amendment holding in Schmerber was “premised upon” the facts that the defendant was under arrest, that there was probable cause, and that the test was performed in a nonoffensive manner. There is no good faith basis for this suggestion. Nowhere in the discussion of the Fifth Amendment issue did the Schmerber court allude to any of these facts. 384 U.S. at 760765; see also Downey, 407 Mass. at 477 (court refused to suppress blood test results where grand jury order issued prior to indictment, arrest or determination of probable cause). Defendant goes on to assert that “(t]he Supreme Judicial Court has consistently applied article XII of the Massachusetts Declaration of Rights more stringently than the federal courts have enforced the federal version.” The Supreme Judicial Court has clearly held that article XII protects only communications and testimony and not real or physical evidence. Lydon, 413 Mass. at 314; Brennan, 386 Mass. at 783. Defendant’s reliance on Commonwealth v. Zevitas, 418 Mass. 677 (1994) is misplaced, because Zevitas extended protection for thought processes as a form of testimony and did not extend the privilege to real or physical evidence. This court will not extend the privilege beyond the bounds clearly defined by the Supreme Judicial Court.
Because neither the Fifth Amendment of the United States Constitution nor article XII of the Massachusetts Declaration of Rights protects against the use of involuntary blood tests in the circumstances of this case, the results will not be suppressed on these grounds.
E.G.L.c. 90, §24(1)(e)
Blood tests taken at the direction of a police officer are admissible in prosecutions for operating under the influence under G.L.c. 90 §24 only if the defendant consents to the test and is afforded an opportunity to have an independent test performed. G.L.c. 90, §24(l)(e). Defendant argues that the results of the blood tests are inadmissible because they were made at the direction of a police officer and were made without defendant’s consent.
The blood tests were administered as part of defendant’s medical evaluation and treatment. See Russo, 30 Mass.App.Ct. at 925. Dr. Chin testified that he ordered the blood tests in order to determine whether the defendant was experiencing internal bleeding and to determine whether to attribute defendant’s conduct to substance abuse or possible head injuries. He also testified that ordering blood tests was consistent with the standard protocol for patients such as the defendant who are admitted with multiple organ involvement resulting from a motor vehicle accident. See Riley, 22 Mass.App.Ct. at 700 (tests performed for identical medical reasons were admissible). There is no evidence that the police restrained or transported defendant to the hospital for the purpose of conducting a blood test. The police did not request the blood work and did not influence or participate in the decision to order the blood work. See Commonwealth v. Angivoni, 383 Mass. 30, 32 (1981) (tests inadmissible because police asked for blood alcohol test).
Because the blood tests were not administered at the direction of a police officer, the results will not be suppressed on the basis of G.L.c. 90, §24(l)(e).
F.Right to Independent Examination
General Laws c. 263, §5A provides a person charged with operating a motor vehicle under the influence with the right to be examined by a physician of his choice. It also requires police officials to inform him of his right immediately upon being booked. Id. The police do not have an obligation to assist a defendant in obtaining a medical examination; however, they may not prevent or hinder the defendant’s reasonable *132 and timely attempt to obtain such an examination. Commonwealth v. Hampe, 419 Mass. 514, 520 (1995) (police refused to call bail commissioner); Commonwealth v. Rosewarne, 410 Mass. 53, 55 (1991) (police may have told girl friend she could not pay bail and take defendant to hospital).
Defendant claims that the police did not comply with the notification provisions of this statute, and that the police used the invocation of “protective custody” as a pretext to compel the defendant to appear at the hospital for a blood test. The statute does not require that the police notify suspects of their right to an independent examination; only persons actually charged are entitled to this right. G.L.c. 263, §5A. Even if one assumes that the police placed defendant into protective custody as a pretext in order to avoid the notice requirement,[3] contrary to the findings of this court, that fact alone would not prove that the police obstructed defendant’s abilify to obtain an independent examination. The role of the police in defendant’s case, limited to assisting hospital personnel in restraining defendant, is different from the conduct of police in Hampe and Rosenwarne where the police detained the defendants at the police station and refused to allow the defendants to be released so that they could obtain independent tests. See 419 Mass. at 520; 410 Mass. at 55. Here, it was the doctor who was concerned that defendant’s flailing about could result in paralysis through neck injury, who determined that xrays and a CAT scan were medically necessary, and who decided to sedate defendant in order to complete his medical evaluation and treatment. The police played no role in decisions effecting the duration of defendant’s incapacitation or hospitalization.
Because defendant was not charged with operating under the influence at the time he was in protective custody, and because the police did not obstruct defendant’s ability to obtain an independent examination, G.L.c. 263, §5A does not apply. Accordingly, the blood test results will not be suppressed on the basis of that statute.
G. Failure to Comply with Discovery Agreement
Defendant claims that the Commonwealth has failed to provide records it had earlier agreed to produce pertaining to blood testing procedures at Marlborough Hospital. Counsel are directed to confer face-to-face on this issue within one week after receipt of this Order, following which defendant may file an appropriate motion to compel discovery as to any disputed item.
H. G.L.c. 123, §12
Defendant claims that his restraint by the police, and subsequently by hospital personnel, was in violation of G.L.c. 123, §12 because neither the police nor the hospital personnel made an application to have him hospitalized for ten days at a facility for treatment of the mentally ill. Defendant then claims that because his restraint by the police and hospital personnel violated G.L.c. 123, §12, the indictment must be dismissed.
Defendant’s first claim is frivolous. He does not claim that, at the time of the accident, he was mentally ill or that the police or hospital personnel considered him to be mentally ill. The tenor of his affidavits, filed in support of the pending motions, suggests exactly the opposite. Defendant should not, therefore, be surprised that no attempt was made to commit him for that reason. Any suggestion that G.L.c. 123, §12 provides the only legal basis upon which defendant could have been restrained must also be rejected. General Laws c. 11 IB, §8 (protective custody of intoxicated persons) authorizes police to use such force as is reasonably necessary to carry out their authorized responsibilities.
Defendant’s second claim, that the supposed violation of G.L.c. 123, §12 requires dismissal of the indictment, is without any basis in the law. General Laws c. 123 contains no provision supporting this assertion, and defendant has not cited any supporting authority.
2. MOTION TO DISMISS BASED ON G.L.C.
90C, §2
General Laws c. 90C, §2 requires that police officers “record the occurrence of automobile lawviolations upon a citation ... as soon as possible and as completely as possible.” One of the purposes of this statute, “commonly called the ‘nofix’ law,” is to afford prompt and definite notice of the nature of the alleged offense. Commonwealth v. Cameron, 416 Mass. 314, 316 (1993). The objective is to prevent a situation in which a person cannot establish a defense due to a delay in being charged. Id.; see also Commonwealth v. Barbuto, 22 Mass.App.Ct. 941, 943 (1986) (purpose includes notification of whether violator is subject of complaint or warning). Accordingly, a failure by the police to “give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation” with the following exceptions: 1) the violator could not be stopped, 2) additional time was required to determine the nature of the violation or the identity of the violator, 3) the court finds that circumstances justify the failure, 4) certain violations resulted in one or more deaths. G.L.c. 90C, §2. Failure to comply with the statute is not fatal to the prosecution of a complaint where the purposes of the statute have not been frustrated and the conduct of the police was not seriously deficient or negligent. Cameron, 416 Mass. at 317. For example, in cases of arrest, the procedures are inapplicable because there can be no suspicion of “fix” and because the offender is put on adequate notice. Commonwealth v. Babb, 389 Mass. 275, 283 (1983). In cases involving serious charges, the importance of absolute observance is minimized because the likelihood of a “fix” is “virtually excluded” and notice is implicit. Id.
Prior to the addition of the fourth exception, St. 1986, c. 620, §18, the courts had used the third exception to avoid dismissing charges where there were particularly serious injuries and the purposes of the statute had not been frustrated. Cameron, 416 Mass. at 317 (citing Babb, 389 Mass. at 283). The 1986 *133 amendment, creating an exception for certain violations causing death, “shows that, when the most serious of personal injuries is involved, the purposes of §2 are made unimportant as against the public interest in the prosecution of such violators.” Id. The fact that the 1986 amendment did not explicitly deal with serious nonfatal injuries has been construed to indicate legislative acceptance of the courts’ prel986 interpretation. Id. at 317 n.4. Where there are serious personal injuries the courts look “more broadly” at the purposes of the statute and do not require absolute observance of the procedures. Id. at 31718.
Defendant correctly points out that neither the first exception (defendant flees) nor fourth exception (fatalities) to §2 apply in this case.
Defendant also argues that the police had essentially concluded their investigation by the time Officer Brewster encountered defendant at the hospital and, therefore, that the second exception (additional time required for investigation) does not apply. The officers’ uncertainty whether this was defendant’s fourth or fifth violation is not a sufficient excuse for delay, because there is no difference in the statutory elements or penally for a conviction of OUI as the fourth or fifth offense. G.L.c. 90, §24. While there was credible evidence that the police intended to continue their investigation at the hospital, including, at minimum, additional questioning of defendant, there came a time at the hospital where the officers decided that they had sufficient evidence to charge defendant. At that point, the spirit of G.L.c. 90C, §2 required that they complete the citation and leave it with defendant, in his clothes if his condition at the time prevented him from being personally presented with it. See Russo, 30 Mass.App.Ct. at 92425, 925 n.2 (citation left in defendant’s clothes on hospital gurney). This procedure would, in general, provide a defendant with more timely notice than mailing the citation. Accordingly, the second exception to §2 does not apply in this case.
Defendant claims that the third exception applies only to civil violations because the circumstances must be consistent “with the purpose of this section to create a uniform, simplified and noncriminal method for disposing of automobile law violations” (emphasis added). G.L.c. 90C, §2. This is a misinterpretation of the statute. The words “noncriminal” apply to the “method of disposing” of the violation, not to the nature ofviolation. Defendant cites no authority for his claim and ignores the fact that most if not all of the cases that have discussed this exception have involved criminal complaints. See e.g. Cameron, 416 Mass. at 314, 316.
Finally, defendant discusses the courts’ handling of cases involving serious injury within the context of the fourth exception (for fatalities) rather than the third exception (for circumstances consistent with the purpose of §2). Cameron clearly states that the exception for fatalities was a statutory enumeration of one type of circumstance previously dealt with under the third exception, and that it was not intended to change the judicial practice of considering lifethreatening injuries as “circumstances” under the third exception. 416 Mass. at317n.4. Indeed, the very holding of Cameron, which did not involve a fatality,[4] is that “[bjecause there was an obvious, life threatening injury in this case and no purpose of §2 is being thwarted, and because the police were not seriously deficient or negligent in their handling of the matter,... there was justification for excusing the threeday delay in issuing the citation." Id. at 31718.
Defendant deals with the holding of Cameron by including it as one of a line of cases to “be viewed with a jaundiced eye in light of the fact that they all involve fatalities predating the effective date of the 1986 amendment of the statute.” (Defendant Memorandum in Support of Motion to Dismiss at 9.) This is a blatant misrepresentation of the facts of Cameron. As noted, the court’s discussion in Cameron was premised upon the assumption that there was a lifethreatening injury, not a fatality, and that the fourth exception did not apply. See 14. at 31617. Because there were multiple potentially lifethreatening injuries involved in this case, the charges will not be dismissed unless the purposes of the statute were thwarted or there was seriously deficient or negligent police conduct. See id. at 317.
The circumstances of this case tend to minimize the concern over the “nofix” purposes of this statute because of the seriousness of the injuries, the number of parties involved in the accident, and the number of police officers and medical personnel who were involved in the aftermath and who observed defendant’s apparently intoxicated condition. See Commonwealth v. Pappas, 384 Mass. 428, 431 (1981) (risk of “fix” reflects fleeting and nonserious nature of most traffic infractions). It is extremely unlikely that in these circumstances police officers “would regard this as a minor accident in which their discretion concerning whether to issue a citation would be absolute and unchecked.” See id. at 432.
The circumstances of this case present a closer question with regard to the notice purposes of the statute. The nature of the accident, a headon collision involving multiple injured parties and extensive property damage, made it inconceivable that defendant would be unaware of the seriousness of the situation. Babb, 389 Mass. at 284. Defendant does not claim that he was unaware of the accident, or that he was intoxicated to such an extent that he could not appreciate what had happened. See Commonwealth v. Cameron, 34 Mass.App.Ct. 44, 4849 (Dreben, J., dissenting), rev’d, 416 Mass. 314, 319 (1993) (condition of pedestrian and vehicle, along with conduct of defendant, showed awareness, even though defendant was in shock). At the hospital, Officer Brewster asked defendant about the accident and defendant refused *134 to answer any questions, indicating an awareness that he might be charged. See id. Defendant had notice of his prior offenses and, therefore, must have known that if he received a citation it would almost certainly be a complaint rather than a warning. See Barbuto, 22 Mass.App.Ct. at 943. All these circumstances tend to show that defendant knew of the likelihood that he would be charged with some kind of violation.
Defendant’s claim that he was denied notice depends primarily upon G.L.c. 263, §5A. This statute defines the notice a person accused of operating under the influence is entitled to in order to provide a reasonable opportunity to defend himself. Defendant is correct in his contention that he was denied the benefit of the immediate notification of his rights under G.L.c. 263, §5A and so, to some extent, the notice policy of G.L.c. 90C, §2 may have been frustrated. However, the' primary reason defendant lost the opportunity to act upon the notice he had was that the doctor found it necessary to sedate him in order to complete his medical examination and treatment. That decision was made necessary because of defendant’s belligerent and uncooperative behavior. Under these circumstances, this court finds that the failure of the officers to issue a citation or arrest defendant was not a significant cause of defendant’s loss of opportunity to gather evidence.
The final issue is whether the conduct of the police was so seriously deficient or negligent as to make the failure unjustifiable. Defendant argues that the officers had completed their investigation by the time they reached the hospital and that they should have presented him with the citation when they arrived. Whether the investigation was completed prior to the arrival of the officers at the hospital is open to doubt, since one of Officer Brewster’s purposes in going to the hospital was to question the defendant. Even assuming that such questioning was unnecessary, defendant’s flailing about, abusive language, and spitting made it extremely difficult for anyone to communicate with him. Medical personnel, both at the accident scene and in the hospital, had expressed concern that defendant’s state of agitation could result in neck damage, possibly resulting in paralysis. The police and the hospital personnel tried to calm defendant down, and hospital personnel asked the police to assist with the restraint of defendant in order to decrease the likelihood of such injury.
Failure by a police officer to arrest a defendant, explain the charges against him, read him his rights, and present him with a citation, is not egregious when viewed against the circumstances just described. Moreover, by the time the police officers left the hospital, defendant was sedated and was in no condition to be informed of his rights. Considering these circumstances, and the fact that the officers returned to the station house immediately upon leaving the hospital, attempted to complete the citation, and mailed it the next morning, the officers’ failure to complete the citation at the hospital and leave it in defendant’s clothing cannot be considered seriously deficient or negligent.
Because of the serious nature of the accident and the conclusion that the provisions of the “nofix” statute were not frustrated, the charges will not be dismissed based upon G.L.c. 90C, §2.
ORDERED
For the foregoing reasons, defendant’s motion to dismiss or in the alternative to suppress evidence of blood testing is DENIED, and defendant’s motion to dismiss based on G.L.c. 90C, §2, is also DENIED.

defendant is incorrect in his assertion that Russo was predicated upon the defendant’s consent. The court held that the evidence would be admissible, “even if one were to assume that the blood sample had been given involuntarily.” 30 Mass.App.Ct. at 925.

Defendant argues that a defendant’s consent is essential to admissibility. Where as here there is no government direction, lack of consent will not require exclusion of test results. Russo, 30 Mass.App.Ct. at 925.

defendant’s claim is somewhat different. He claims that protective custody was a pretext for obtaining a blood test. Even if this claim were true, which this court finds it not to be, such a motive on the part of the police would not demonstrate that the police prevented defendant from obtaining an independent examination after the involuntary blood test was completed.

Notwithstanding defendant’s representation to the court that Cameroninvolved a “ 1988 fatality.” (Memorandum of Law in Support of Defendant’s Motion to Dismiss at 9.)