Garsh, J.
Defendant Mary Kenney (“Kenney”) moves to dismiss the following indictments pending against her: operating a motor vehicle recklessly or negligently causing endangerment, leaving the scene of a motor vehicle collision after causing personal injuiy, operating under the influence of an intoxicating substance, recklessly or negligently causing serious bodily injury, and operating under the influence of an intoxicating substance causing serious bodily injury.[1] Defendant bases her motion upon the Commonwealth’s failure to have issued citations pursuant to G.L.c. 90C, §2. For the reasons set forth below, the motion to dismiss is DENIED.
FACTUAL BACKGROUND
The following facts are gleaned from the grand jury record:
On the evening ofNovember 3,1995, LuellaHensley (“Hensley”) was walking to a bus stop. As she began to cross a street in the crosswalk, she was hit by a car whose driver did not stop. The force of the vehicle knocked Hensley forty-three feet from the crosswalk.
Hensley, severely injured, was taken to Massachusetts General Hospital where she remained in a coma for twenty-eight days. She suffered head fractures, a broken neck, a stroke because of a piece of bone in her neck, a broken leg, and a fractured pelvis. Once she came out of her coma, Hensley was transferred to Spaulding Rehabilitation Hospital where she stayed through April of 1996. She is now in a nursing home unable to talk or to walk.
The police spoke with eyewitnesses at the scene of the accident. One eyewitness described the car as a small blue metallic Toyota or Nissan and the driver as a white woman in her fifties with reddish-brown hair worn in a bun or pug-siyle cut. Another witness said he saw a “woman flying” and the automobile, a blue Nissan, speeding away. At the accident scene, the police retrieved a small black piece of plastic.
On November 4, 1995, an anonymous caller told the police that Kenney was the driver of the car that hit Hensley. The caller described the car as a blue Mustang with a white top. Two days later, Attorney Francis Robinson (“Robinson”) called the police and requested a meeting. The police met with Robinson and Kenney at Robinson’s office. At that time, Robinson provided the police with Kenney’s name, address, and date of birth, and she asked to be notified if probable cause developed to arrest Kenney.
After that meeting, on November 8, 1995, the police spoke with a maintenance and security guard at Kenney’s condominium complex, who stated that a few days before, a blue or gray automobile had been parked in one of the two parking spaces assigned to Kenney. He also advised that he understood that Cynthia Murphy (“Murphy”) received mail at Kenney’s address. A background check on Murphy disclosed that she had been arrested in July of 1995 for operating under the influence and leaving the scene of an accident causing personal injury. The car used by Murphy in that accident was a blue Mustang.
The police located the Mustang and ascertained that it was leased to Kenney. Its windshield was cracked, and there were black and brown marks and scrapes on the hood. A search of the vehicle, on November 13, 1995, revealed that the small plastic piece recovered from the scene of the accident matched the plastic support assembly inside the engine of the Mustang.
At the end ofNovember, the police showed a photographic array to the eyewitness who had given them the detailed physical description of the driver. He did not identify Kenney.
On December 1,1995, an anonymous caller relayed to the police that the caller had overheard a conversation between Maureen Sullivan (“Sullivan") and Linda Howe (“Howe”) about their friend in East Boston who had hit and seriously injured a woman with her automobile. The police interviewed Howe on December 1 and 4, 1995, who told them what she knew. According to Howe, on the day of the accident, Kenney arrived drunk at Howe’s apartment around 8:00 p.m. Howe gave her a ride to Murphy’s to enable Kenney to get the keys to the blue Mustang. Howe left Murphy’s driving one car and Kenney left driving the Mustang. When Kenney returned later to Howe’s apartment, she told Howe and Sullivan that she thought she hit a person or a tree with her automobile and did not stop to see if she hit anyone. Howe and Sullivan encouraged Kenney to turn herself in, but Kenney did not. Kenney remained at Howe’s that night. According to Sullivan, who was also interviewed by the police, Kenney smelled like she was intoxicated and was confused when she came into their home. That night, Howe and Sullivan did not sleep because Kenney was ciying.
According to Howe, the next morning, Kenney returned home to her residence and telephoned Howe after seeing a news report about the hit and run accident. Kenney was scared and said that she feared being sued and losing everything. Kenney, along with *382 Howe, wentto abankwhere Kenney withdrew $30,000 as a treasurer’s check, which she placed in a “strong box” in her apartment. Sullivan saw Kenney’s Mustang and noticed that it had a cracked windshield.
The police investigation was complete in December of 1995 after the interviews of Howe and Sullivan identified Kenney as the driver. The Commonwealth concedes that the police had enough information at that time to issue citations to Kenney for the traffic offenses for which she has been indicted. The matter was presented to the grand jury as a John Doe investigation in April of 1996, and the indictments were issued against Kenney in June of 1996. No citations have ever been issued.
DISCUSSION
The Commonwealth’s failure to have issued citations is the gravamen of the defendant’s motion to dismiss. G.L.c. 90C, §2 provides that if a police officer does not issue a citation to the defendant “at the time and place of the violation ... it shall constitute a defense in any court proceeding for such violation." The statute goes on, however, to create an exception to this rule where, as here, the defendant “could not have been stopped or where additional time was reasonably necessaiy to determine the nature of the violation or the identity of the [defendant], or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and noncriminal method for disposing of automobile law violations, justifies the failure.” When such an exceptional circumstance applies, “the violation shall be recorded upon a citation as soon as possible after such violation.” G.L.c. 90C, §2.
The statute, commonly referred to as the “no-fix” law, was enacted in order to establish a procedure to minimize the risk of police manipulation of citations and to provide notice to defendants of potential criminal charges. Commonwealth v. Cameron, 416 Mass. 314, 316 (1993); Commonwealth v. Babb, 389 Mass. 275, 283 (1983). “The susceptibility of‘traffic tickets’ to unequal and arbitrary disposition at the hand of traffic officers, and the requirement of prompt notice to the offender, reflect the normally fleeting and non-serious nature of most traffic infractions.” Commonwealth v. Pappas, 384 Mass. 428, 431 (1981).
There is no doubt that the officers could not have issued a citation to Kenney at the scene of the accident, and the defendant does not argue otherwise. Additional time clearly was needed to determine the identity of the defendant, and G.L.c. 90C, §2 explicitly permits additional time to be taken. The failure to have issued citations once probable cause to charge Kenney developed after the interviews of Howe and Sullivan does not automatically entitle Kenney to a dismissal of the indictments, and, given the circumstances of this case, dismissal is not warranted because the purposes of the statute have not been frustrated.
In Commonwealth v. Babb, 389 Mass. at 275, the court held that “assuming the notice and abuse prevention purposes of §2 are met, the apparent seriousness of the accident itself may justify a refusal to dismiss a complaint when an officer failed to issue a citation seasonably.” Cameron, 416 Mass. at 317. Because the focus is on whether the purposes of G.L.c. 90C, §2 have been satisfied, it matters not whether the failure to issue a citation seasonably is traceable to the issuance of a citation late or to its non-issuance.
Nothing in Commonwealth v. Riley, 41 Mass.App.Ct. 234 (1996), in which the court affirmed the dismissal of a complaint where no citation had ever issued to the defendant, mandates automatic dismissal whenever no citation has issued. In Riley, approximately four months after an accident, the police department issued a citation by mail and, at the same time, the department and the district attorney sought a criminal complaint against the defendant for operating while under the influence. At the outset of the show cause hearing, the police department withdrew its application because of its failure to have issued a timely citation to the defendant. During the hearing, the clerk magistrate said that the district attorney’s application for a complaint would probably be denied for the same reason and suggested that an application could be filed by a private citizen because such a person need not show that the violator has been issued a citation in connection with the alleged violation. G.L.c. 90C, §4. As a result, the district attorney’s application for complaint was withdrawn, and, immediately after the hearing, a private citizen filed an application for a complaint against the defendant for operating while under the influence. Id. at 235-36. The sole question before the Appeals Court was “whether the Commonwealth may utilize a citizen’s §4 complaint to prosecute a criminal motor vehicle violation in circumstances where the Commonwealth has concluded that a police complaint would be barred because of the inexcusable failure to issue a timely citation to the violation pursuant to G.L.c. 90C, §2.” Id. at 237. The court answered that question “no” because to do otherwise would permit the police to circumvent G.L.c. 90C, §2. Id. at 238. The holding is expressly limited to the precise facts of that case. Id. at 238, n.5. Here, by contrast, there is no evidence that the police or district attorney attempted to circumvent the purposes of G.L.c. 90C, §2.
The purposes of the statute have been satisfied. Given the pedestrian’s condition following the accident and the very serious charges that have been brought against Kenney, “ ‘fix’ is virtually excluded.” Cameron, 416Mass. at317.The seriousness of the accident also makes it clear that the notice purpose of the statute has been met. “It is inconceivable that the defendant would be unaware of the seriousness of a situation in which [her] vehicle had . . . struck a pedestrian.” Commonwealth v. Pappas, 384 Mass. at 431-32. The statutory concern with notice reflects the assumption *383 that an accident that could easily be forgotten may become the basis for criminal charges. Id. at 431. Because a driver striking a pedestrian will not easily forget such a serious accident, the defendant’s ability to defend herself is not threatened by unseasonable notice. Id. Indeed, the record here reflects that the notice implicit in the seriousness of the accident was received by the defendant, who knew immediately that she was in veiy serious trouble, and, on the day following the accident, took steps to protect her assets. She also promptly engaged an attorney.
In sum, the purposes of G.L.c. 90C, §2 have not been thwarted by the failure to have issued citations to Kenney. Accordingly, the defendant is not entitled to dismissal of the indictments.
ORDER
For the foregoing reasons, the court ORDERS that defendant’s motion to dismiss be, and hereby is, DENIED.

 Nbe defendant also has been indicted for assault and battery by means of a dangerous weapon. Kenney does not seek to dismiss that indictment because it would not be affected by any failure to comply with G.L.c. 90, §2.