COMMONWEALTH vs. FERNANDO PEREZ. No. 03-P-608. October 25, 2004. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Waiver, Trial of indictments together, Required finding, Assistance of counsel.

The defendant, Fernando Perez, appeals his convictions of armed robbery, unlawful possession of a firearm, armed assault with intent to rob, assault and battery by means of a dangerous weapon, and discharging a firearm within 500 feet of a dwelling. He argues that the motion judge improperly denied his motions to suppress written and oral statements made by him and that the trial judge improperly denied his motion for a required finding of not guilty and improperly joined three robbery cases. He further argues that his trial counsel was ineffective. We find no error and affirm.

1. *Motion to suppress.* a. *Background.* The judge presiding over the hearing on the motion to suppress made no written findings of fact. Although a failure to make written findings does not constitute reversible error, certainly the better practice is to do so. *Commonwealth* v. *Grandison,* 433 Mass. 135, 137 (2001) ("We have said that it is desirable and prudent to make a record of the facts . . ."). Without such findings, we "analyze[] the record to see if the findings implicit in the judge's rulings are supported." *Commonwealth* v. *Gaulden,* 383 Mass. 543, 547 (1981). Because of the lack of written findings, we recite the evidence provided at the suppression hearing that supports the judge's ruling in some detail.

Pennsylvania police officers arrested the defendant in Scranton on a fugitive warrant based upon a warrant for his arrest on the underlying charges issued in Springfield, Massachusetts. The Springfield police department faxed to the Scranton police department an "Arraignment Warning" form, requesting that Scranton police read the form to the defendant and ask for his signature.[1] Before the questioning began, Scranton police read both a Miranda form and the arraignment warning form to the defendant.

The defendant acknowledged that he understood each right on the Miranda form, initialing each line and signing the form, thereby waiving his right to counsel and agreeing to speak to the officers. The defendant also signed the arraignment warning form, indicating his waiver of a right to prompt arraignment, which included the appointment of counsel.[2] The ensuing interview took place in the chief of police's office, a room about twelve feet by twelve feet and containing a desk, some chairs, and a computer.

For the next hour and fifteen minutes, a Scranton police officer, Detective Michael Dougherty, conducted a question-and-answer type interrogation. Dougherty testified that he wrote down the questions and the defendant's responses, and then concluded the interview by giving the defendant an opportunity to review the statement and make corrections. After doing so, the defendant initialed the top and bottom of each page.

Both Dougherty and Officer Nelson Ancherani testified that they were not in uniform during this time. They also testified that they did not make the

---

[1]This form states the following: "1. You have a right to a prompt arraignment, that is, to be brought immediately to be arraigned in front of a judge if the district court is in session or, if not, at the next session. 2. At such arraignment, an attorney will be appointed and you may be admitted to bail. 3. Do you understand that you have a right to a prompt arraignment? 4. Having this right in mind, do you wish to talk to me?"

[2]There was no evidence whether Pennsylvania had a similar form.

defendant any promises, did not threaten him, did not raise their voices, and did not unholster their weapons. Both officers testified that the defendant was cooperative throughout the interview, that he did not appear to be under the influence of drugs or alcohol, that he appeared to understand the officers and responded appropriately to their questions, and that he never requested an attorney.

Sometime later, the defendant was taken for a preliminary arraignment where, according to Dougherty, a magistrate informed him of the charges against him, set bail, and informed him how to contact counsel. He declined to seek an attorney in spite of that advice from the magistrate. Afterward, the police returned the defendant to a holding cell in Scranton.

Later that evening, three Springfield police detectives arrived at the Scranton police department. Dougherty arranged for the Springfield officers to speak with the defendant after informing them that the defendant had been cooperative and had not asked for an attorney. Springfield Detective Eugene Dean conducted the interview sitting at Dougherty's desk with the defendant beside him. Detectives James Goldrick and Pedro Cruz sat outside the opening of the cubicle.

After introducing themselves, Dean asked the defendant if he would speak with them, and he agreed to do so. Dean read to the defendant his rights from a Miranda form the detectives brought with them from Springfield. Dean then had the defendant read each right aloud. After each one, Dean asked the defendant, "If you understand that, initial it." The defendant initialed each line and wrote "yes" after line seven ("Do you understand what I have read to you?") and line eight ("Having these rights in mind do you wish to talk to me now?"). Dean, in accordance with the Miranda form, advised the defendant of his right to use a telephone. For the "Waiver of Prompt Arraignment" form, Dean followed the same procedure as for the Miranda form, and the defendant initialed each line and signed it.

Dean then interviewed the defendant for over two hours. Dean testified that the defendant appeared sober, had no difficulty reading, and struck Dean as a "[v]ery intelligent young man." Additionally, Detective Cruz commented that the defendant seemed "a fairly well-educated young man." Both detectives testified that the defendant was respectful and responsive. The officers did not make any threats or promises to him, did not raise their voices, and did not unholster their guns.

Dean used a computer to make a record of the defendant's statement. During the interview, the defendant also drew three diagrams of the crime scenes. The defendant reviewed his statement, adding a line at the end and then signing it. He also signed each diagram. Finally, he identified a picture of his uncle, who was also a suspect and whom the defendant blamed for coercing him into committing the crimes, signing and dating it. The next day, the defendant waived rendition and accompanied the officers to Massachusetts, arriving in Springfield at about 5:00 P.M.

At the Springfield police department, Detectives Cruz and Goldrick, intending to question the defendant again, this time about new information, repeated the Miranda waiver, telephone warning, and prompt arraignment waiver process. After initialing and signing the forms, the defendant telephoned his mother who instructed him not to speak further to the police. The officers did not continue with their questions.

b. *Discussion.* The defendant claims that his waiver of Miranda rights and his statements were not voluntary because he was promised a lawyer that he did not receive and because his statements were not electronically recorded.[3] The defendant relies on language in the Massachusetts arraignment warning form, see note 1, *supra*, faxed to the Scranton police, which states that the defendant is entitled to a prompt arraignment at which an attorney will be provided to him. The form in question, however, is a waiver form in which the defendant gave up his right to a prompt arraignment, which included appointment of counsel. Thus, the promise, if any, of counsel for the defendant was expressly waived by him, and he cannot now rely on it. The defendant also argues that counsel should have been appointed at his preliminary arraignment in Pennsylvania. As noted above, the defendant was offered an opportunity to contact counsel at his preliminary arraignment, but did not do so. That opportunity is all that is required under Pennsylvania law. See Pa.R. Crim.P. 140(d) (as in effect prior to 2001).[4] Even if there was a violation and the defendant should have been provided a lawyer at the preliminary arraignment, there was no evidence revealed at that proceeding from which any "fruit of the poisonous tree" could have been derived. *Wong Sun* v. *United States*, 371 U.S. 471, 484-488 (1963). See *Commonwealth* v. *Fleurant*, 6 Mass. App. Ct. 846, 646 (1978). The defendant received Miranda warnings and waived his right to a prompt arraignment before he was questioned by the Massachusetts detectives. There was no error.

As to the defendant's claim that his interviews should have been electronically recorded, the Supreme Judicial Court stated in *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 424-425 (2004) (decided after oral argument in this case): "We . . . take this occasion to announce that, *henceforth*, the admission in evidence of any confession or statement of the defendant that is the product of an unrecorded custodial interrogation, or an unrecorded interrogation conducted at a place of detention, will entitle the defendant, on request, to a jury instruction concerning the need to evaluate that alleged statement or confession with particular caution." (Emphasis supplied.) The case, by its terms, does not apply to trials conducted prior to the issuance of the decision.[5]

Therefore, upon review of all the evidence, we determine that it supports a conclusion that the defendant was given his Miranda rights, voluntarily waived them, and voluntarily made the statements at issue. See *Commonwealth* v. *Gaulden*, 383 Mass. at 547.

---

[3]The first of these arguments was not raised by defense counsel, and the issue of electronically recorded confessions, while identified in the motion to suppress, was not mentioned in the defendant's affidavit or memorandum, and defense counsel made no argument on it. Therefore, each could be considered waived. See *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987); *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999). Nevertheless, we examine them and conclude that, if made, they would have failed in any event.

[4]Rule 140 has been renumbered and, in a manner not relevant to this case, amended and is currently rule 540. Section (d) now appears as section E. Pa.R.Crim.P. § 540(E) (2002).

[5]The reference later in the opinion to no "need to postpone the implementation of [the] decision" obviously refers to the applicability of the decision to unrecorded confessions or admissions that had already occurred, not to trials that had already taken place. See *Commonwealth* v. *DiGiambattista*, 442 Mass. at 449.

2. *Joinder of indictments.* The defendant next argues that he was prejudiced by the trial judge's improper joinder of the indictments against him. The defendant was indicted for three crimes that all occurred in downtown Springfield within approximately thirty minutes. Pursuant to Mass.R.Crim.P. 9, 378 Mass. 859 (1979), "joinder requires first that the offenses are related, and second that joinder be in the best interests of justice." *Commonwealth* v. *Sullivan,* 436 Mass. 799, 803 (2002). Whether joinder is proper is in the trial judge's discretion. *Ibid.* According to Mass.R.Crim.P. 9, two or more offenses are related "if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979). In evaluating relatedness for purposes of joinder, "[t]ime and space play an important role." *Commonwealth* v. *Delaney,* 425 Mass. 587, 594 (1997), cert. denied, 522 U.S. 1058 (1998). Considering the timing and location of the crimes, we cannot say that the judge abused his discretion in finding the offenses sufficiently related for purposes of joinder. See *Commonwealth* v. *Delaney,* 425 Mass. at 594-595. Moreover, the defendant has failed to show prejudice from the joinder of the offenses.

3. *Motion for required finding of not guilty.* The trial judge properly denied the defendant's motion for a directed finding of not guilty because the evidence, viewed in the light most favorable to the Commonwealth, was more than sufficient to reasonably support a finding of guilt beyond a reasonable doubt. See *Commonwealth* v. *Latney,* 44 Mass. App. Ct. 423, 426 (1998).

4. *Ineffective assistance of counsel.* Finally, the defendant's argument of ineffective assistance of counsel does not rise to the level of appellate argument. See *Nagle* v. *Nagle,* 15 Mass. App. Ct. 337, 339 (1983).

*Judgments affirmed.*

*Christopher R. Goddu* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.