Commonwealth *v.* Correia.

COMMONWEALTH *vs.* JOSE F. CORREIA, THIRD.

No. 12-P-962.

Plymouth. April 18, 2013. - June 21, 2013.

Present: GREEN, CARHART, & AGNES, JJ.

*Motor Vehicle,* Operating to endanger, Citation for violation of motor vehicle law. *Practice, Criminal,* Citation for violation of motor vehicle laws, Dismissal.

Discussion of the so-called "no fix" statute, G. L. c. 90, § 2, which prevents the manipulation and misuse of traffic citations and promotes the prompt and definite notice to an alleged violator of the nature of the offense. [782-784]

A District Court judge properly denied the criminal defendant's motion to dismiss a complaint charging him with negligent operation of a motor vehicle, where a citation for the alleged violation, witnessed by an off-duty State police trooper on a Saturday afternoon and delivered in hand to the defendant on the following Tuesday morning at the end of the trooper's first shift after returning to work, was delivered in a timely manner within the requirements of G. L. c. 90, § 2, given that the trooper informed the defendant at the time of the incident that the trooper was not on duty, was scheduled to return to work two days later, and did not have his citation book with him; and given that nothing in the record suggested that the defendant was left in doubt whether a citation would issue. [784-787]

COMPLAINT received and sworn to in the Plymouth Division of the District Court Department on May 4, 2010.

A motion to dismiss was heard by *Thomas S. Barrett*, J., and the case was heard by *Christopher D. Welch*, J.

*Ellen King* for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

AGNES, J. On appeal from his conviction of negligent operation of a motor vehicle, G. L. c. 90, § 24(2)(*a*), the defendant claims error in the denial of his motion to dismiss the complaint. The sole question presented by this appeal is whether a citation

for an automobile law violation witnessed by an off-duty State police trooper on a Saturday afternoon, and delivered in hand to the defendant on the following Tuesday morning, at the close of the trooper's first shift after returning to work, was delivered in a timely manner. The governing statute, G. L. c. 90C, § 2, provides that, in most situations, citations should be delivered to the alleged offender at the time and place of the violation. We affirm.

*Background.* The essential facts are not in dispute.[1] On September 26, 2009, off-duty State police Trooper Thomas Fitzpatrick (trooper) observed a motor vehicle traveling at a high rate of speed on a dirt road in the Myles Standish State Forest in Plymouth. The posted speed limit was twenty miles per hour on one stretch of the road and only ten miles per hour on another stretch near a Boy Scouts camp.[2] The trooper estimated the motor vehicle driven by the defendant reached speeds of up to fifty miles per hour in these areas. The trooper had to pull his motor vehicle off the road to avoid being struck by the defendant's motor vehicle, and he observed several other drivers do the same to avoid a collision. The trooper followed the defendant to a nearby Department of Youth Services facility. The trooper was off duty and not in uniform. Initially, the defendant was not cooperative. The trooper asked to speak to the defendant's supervisor.

The trooper related his observation of the defendant's driving

---

[1] The facts are drawn from the hearing on the defendant's motion to dismiss, which took place on June 29, 2011. The sole witness was the State police trooper who issued the citation. Following the hearing, the judge indorsed the defendant's motion as follows: "upon consideration of the credible evidence, defendant's motion is denied." The better practice is for the motion judge to make detailed, subsidiary findings. See *Commonwealth* v. *Perez,* 62 Mass. App. Ct. 912, 912 (2004). However, here it is appropriate to apply the rule that "[i]n the absence of subsidiary findings on the issue of credibility, we assume that the judge's determination was adverse to the losing party (in this case the defendant)." *Commonwealth* v. *Quigley,* 391 Mass. 461, 463 (1984), cert. denied, 471 U.S. 1115 (1985). It is evident from the record that the motion judge credited the trooper's account of the events with one exception. See *Commonwealth* v. *Williams,* 439 Mass. 678, 686 (2003). See also *Commonwealth* v. *Lanoue,* 392 Mass. 583, 588 (1984), *S.C.,* 400 Mass. 1007 (1987), and 409 Mass. 1 (1990). The exception concerns the time and date of the delivery of the citation, which was made the subject of a stipulation.

[2] The trooper was attending a State-wide jamboree at the camp with his son.

to the defendant's supervisor and, in the defendant's presence, explained that he was going to issue a citation[3] to the defendant for operating so as to endanger, a criminal violation, G. L. c. 90, § 24(2)(*a*), and speeding, a civil infraction, G. L. c. 90, § 17.[4] Initially, the defendant was uncooperative and ignored the trooper's questions. After the defendant's supervisor joined the conversation, the defendant became more cooperative. He offered that he thought the speed limit was thirty-five miles per hour and that he was running late for work. The trooper identified the defendant's motor vehicle as the one he had observed traveling at a high rate of speed, and confirmed the defendant's identity by examining his license. He obtained a piece of paper from the defendant's supervisor and recorded the basic facts. The trooper informed the defendant that he was off duty, he did not have his citation book[5] with him, and he was not scheduled to return to work until 11:00 P.M., Monday, September 28. A citation was not delivered to the defendant at the scene. The citation was prepared by the trooper at home later that evening (Saturday) and was delivered in hand to the defendant at his home at 7:00 A.M. on Tuesday, September 29, at the end of the first shift the trooper worked after returning to duty.

*Discussion.* 1. *The statutory framework.* General Laws c. 90C, § 2, as appearing in St. 1985, c. 794, § 3, provides, in part, as follows:

> "Notwithstanding the provisions of any general or special law, other than a provision of this chapter, to the contrary, any police officer assigned to traffic enforcement duty shall, whether or not the offense occurs within his pres-

---

[3]A "citation" is defined in G. L. c. 90C, § 1, as appearing in St. 1991, c. 138, § 157, as "a notice upon which a police officer shall record an occurrence involving all automobile law violations by the person cited. Each citation shall be numbered consecutively and shall be in such form and such parts as determined jointly by the administrative justice of the district court department and the registrar."

[4]With certain exceptions not relevant here, a "civil motor vehicle infraction" is defined as "an automobile law violation for which the maximum penalty does not provide for imprisonment." G. L. c. 90C, § 1, as appearing in St. 2009, c. 65, § 7. The defendant was found not responsible for speeding.

[5]General Laws c. 90C, § 1, as appearing in St. 1984, c. 97, § 2, defines "citation book" as "not less than twenty citations, stapled or bound together in book form. Each such book shall be consecutively numbered."

ence, record the occurrence of automobile law violations upon a citation, filling out the citation and each copy thereof as soon as possible and as completely as possible and indicating thereon for each such violation whether the citation shall constitute a written warning and, if not, whether the violation is a criminal offense for which an application for a complaint as provided by subsection B of section three shall be made . . . . A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure."

The defendant moved to dismiss the complaint on grounds that he did not receive a copy of the citation at the scene in violation of G. L. c. 90C, § 2. Section 2, commonly known as the "no fix" law, serves two purposes: (1) the prevention of manipulation and misuse of citations and (2) the prompt and definite notice to the alleged violator of the nature of the offense. *Commonwealth* v. *Pappas*, 384 Mass. 428, 431 (1981). When a copy of the citation is not given to the alleged violator at the scene of the offense, the burden shifts to the Commonwealth to demonstrate that one of the exceptions to this requirement set forth in the statute is applicable. *Commonwealth* v. *Mullins*, 367 Mass. 733, 734-735 (1975) (*Mullins*). "Each case must be decided on its own peculiar facts." *Commonwealth* v. *Provost*, 12 Mass. App. Ct. 479, 484 (1981).

By its terms, § 2 excuses the need to deliver a copy of the citation at the time and place of the violation in three circumstances: (1) when "the violator could not have been stopped"; (2) when "additional time was reasonably necessary to determine the nature of the violation or the identity of the violator"; and (3) "where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform,

simplified and non-criminal method for disposing of automobile law violations, justifies the failure." If the statute was violated, the defendant is under no obligation to show prejudice; the complaint must be dismissed.[6] See, e.g., *Commonwealth* v. *Roviaro,* 32 Mass. App. Ct. 956, 959 (1992). The only exception that is potentially applicable in this case is the third.

2. *Application of the statute to an off-duty officer.* In *Commonwealth* v. *Pizzano,* 357 Mass. 636 (1970) (*Pizzano*), the Supreme Judicial Court addressed the application of G. L. c. 90C, § 2, to police officers who observe an automobile law violation[7] while they are off duty and without their citation books. In *Pizzano,* a State police trooper observed the defendant, without protective headgear, operating a motorcycle without registration plates. *Id.* at 637 & n.1. The trooper's observations were made on a Sunday evening. *Id.* at 637. The trooper knew the defendant and the defendant, in turn, knew that the trooper was a police officer. *Ibid.* The defendant refused to produce his license or registration. *Ibid.* The trooper returned to his home, retrieved his citation book, filled out a citation with the information then available to him, and arranged for the citation to be delivered to the defendant at his home by another State trooper at 4:00 P.M. on the following day (Monday). *Ibid.* In rejecting the defendant's argument that the trooper violated the statute by not delivering the citation to him at the time and place of the violation, the court reasoned that the delay in delivering the citation to the defendant was a "circumstance, not inconsistent with the purpose of" the statute. *Id.* at 638.

The only other case dealing with a delay in the issuance of a citation where the delay was caused in part by the officer being off duty for a couple days is *Commonwealth* v. *Cameron,* 416

---

[6]"Although prompt notice of the charge or charges is an obvious purpose and consequence of the general requirement of the service of a citation at the scene of the alleged offense, the defense made available by § 2 is not limited to those who have been prejudiced by delay." *Mullins, supra* at 735 (citations omitted). In *Mullins,* the court explained that even when the failure to deliver a copy of the citation is the result of a good faith mistake, the law is violated and the complaint must be dismissed. *Id.* at 736.

[7]An "automobile law violation" is defined as "any violation of any statute, ordinance, by-law or regulation relating to the operation or control of motor vehicles other than a violation of [local parking regulations and the State motor carrier statute]." G. L. c. 90C, § 1, as appearing in St. 1987, c. 399, § 2.

Mass. 314 (1993) *(Cameron)*. In *Cameron*, an on-duty officer arrived at the scene of an accident in which a motor vehicle struck and injured a boy on a bicycle. *Id.* at 315. The defendant operator of the motor vehicle was present, though he appeared to be in shock. *Ibid.* He was allowed to leave the area, and he was not issued a citation for any violations of the law before he departed. *Ibid.* After taking steps to secure medical assistance for the victim, who had suffered serious injuries, the officer worked at the scene for two hours. *Ibid.* There was uncertainty whether the victim would survive. *Ibid.* The following day, the officer continued his investigation. *Ibid.* The officer concluded that the defendant had been speeding and had crossed a double solid line. *Ibid.* On the third and fourth days, the officer took no action because he was off duty. *Ibid.* On the fifth day, the officer returned to duty and caused an appropriate citation to be delivered to the defendant. *Ibid.*

The trial judge allowed the defendant's motion to dismiss and a divided panel of this court affirmed. *Commonwealth* v. *Cameron*, 34 Mass. App. Ct. 44 (1993). However, the Supreme Judicial Court reversed and ordered the charges reinstated. The court stated:

> "Because there was an obvious, life-threatening injury in this case and no purpose of § 2 is being thwarted, and because the police were not seriously deficient or negligent in their handling of the matter, we conclude that there was justification for excusing the three-day delay in issuing the citation. We thus disagree with an analysis of § 2 that measures 'justification' in this case simply in terms of the inadequacy of the explanation that [the officer] took two days off and did not understand that an effective citation for motor vehicle homicide could be issued at any time if the injured boy should die. In deciding this case, we look more broadly at the purposes of § 2."

*Cameron, supra* at 317-318.[8]

We will assume, without deciding, for purposes of our analysis

---

[8]*Commonwealth* v. *Provost*, 12 Mass. App. Ct. at 480-481, involved a twenty-seven-day delay from the date when the on-duty officer responded to the scene of an accident involving multiple deaths and life-threatening injuries to the date when the citations were issued. The court explained that twenty

that the trooper was "assigned to traffic enforcement duty" as that phrase is used in G. L. c. 90C, § 2. The defendant's view, in essence, is that the language in § 2 that requires the citation to be filled out "as soon as possible," coupled with the fact that there is no requirement that the defendant demonstrate prejudice, should be understood to require that a citation issued by an off-duty officer be delivered within twenty-four hours of the violation. While that occurred in *Pizzano*, it is not the holding in the case.

When read together, *Pizzano* and *Cameron* support an interpretation of § 2 that recognizes the right of an off-duty officer, when cause exists, to stop a motorist for an automobile law violation and determine that a citation should be issued. When, due to the circumstance of being off duty, the officer is unable to deliver a copy of the citation to the defendant at the time and place of the violation, a delay in delivery of the citation is not fatal so long as the officer acts with reasonable promptness, and the purposes of the statute are not compromised. There is no fixed number of hours within which delivery must occur, and no requirement that delivery must occur on the very day of the violation. See *Commonwealth* v. *Babb*, 389 Mass. 275, 283 (1983) (strict enforcement of the statute does not require a dismissal of the charges when a delay in delivery of the citation to the offender is justified and the twin goals of preventing the manipulation of tickets and providing notice to the offender are not frustrated).

Here, the defendant was informed that the trooper was not on duty and that he was scheduled to return to work two days later. The trooper also told the defendant he did not have his citation book with him. Just as in the *Cameron* case, two days passed without any steps being taken to deliver the citation to the defendant. However, as in *Cameron*, during the trooper's first shift on duty following his off-duty time, the trooper delivered the citation to the defendant at his home. We attach no particular

days of the delay were unavoidable due to the complexity of the investigation and the inability to interview the survivors due to their serious injuries. *Id.* at 482-483. In concluding that the remainder of the delay did not contravene the requirements of G. L. c. 90C, § 2, the court noted that during the seven-day period when the officer was off duty, he was analyzing the information he had gathered, and that this did not undermine the purpose of the statute. *Id.* at 485.

significance to the fact that the trooper did not deliver the citation to the defendant immediately upon beginning his shift; indeed, a motorist would not reasonably expect an officer who was unable to deliver a citation to him at the time and place of a violation occurring two days earlier (or someone acting on his behalf) to come to his home at 11:00 P.M. to complete delivery. See *Commonwealth* v. *Gray*, 423 Mass. 293, 296 (1996) (literal application of the words of the statute should be avoided if the effect is to impose an unreasonable burden on police). Cf. *Commonwealth* v. *Grimshaw*, 413 Mass. 73, 77, 81 (1992) (explaining that under G. L. c. 276, § 2, in order to preserve "the important common law values of sanctity of the home and protection of the police and citizens," the police must obtain prior judicial approval to execute a search warrant during the nighttime, which the court defined as between the hours of 10:00 P.M. to 6:00 A.M.). As in *Cameron*, the delay in delivering the citation to the instant defendant did not compromise the statute's purpose to provide clear notice to the defendant that he will be charged with a violation and to prevent the manipulation of the process.

There is nothing in the record before us to suggest that the defendant was left in doubt whether a warning or a citation would issue. The trooper informed the defendant at the scene that a citation would be issued and identified the specific violations in question. Thus, when an off-duty officer who is not in possession of his citation book investigates an automobile law violation, and informs the offender that a citation will be issued for one or more offenses or infractions, physical delivery of the citation to the offender two days later at the end of the officer's first shift after returning to work is delivery with reasonable promptness and "a circumstance, not inconsistent with the purpose of [G. L. c. 90C, § 2]," which justifies the failure to deliver the citation to the alleged violator at the time and place of the violation. Accordingly, we conclude that the motion judge correctly denied the defendant's motion to dismiss.

*Judgment affirmed.*