COMMONWEALTH *vs*. WILLIAM J. NADWORNY. No. 90-P-431. February 14, 1991. *Motor Vehicle*, Citation for violation of motor vehicle law, Homicide. *Practice, Criminal*, Citation for violation of motor vehicle law. *Constitutional Law*, Equal protection of laws. *Evidence*, Videotape, Demonstration.

The defendant Nadworny was convicted of negligent homicide by motor vehicle, G. L. c. 90, § 24G. He appeals, claiming that the judge erred in denying his pretrial motion to dismiss the complaint for undue delay in the service of a citation upon him, and erred, again, in excluding from evidence a videotape offered by the defense which purported to reenact the event. The appeal fails.

1. The following appeared at the hearing on the pretrial motion. The defendant was driving uphill in a westerly direction on Institute Road in Worcester. He turned left at an intersection to enter Westland Street. A bicyclist descending eastward on Institute Road collided with the front of Nadworny's car. He was thrown by force of the collision across the car front and struck a light pole. He was severely injured, as the defendant could observe. This was at 5:43 P.M. on the afternoon of April 21, 1987. Within a few minutes, Officer Allyn Jones and other officers were on the scene. After inquiries and brief investigation, Jones handed the defendant citations for failure to keep to the right and failure to use due care and caution in making a left-hand turn.[1] On April 29, the bicyclist died of the injuries. Officer Jones learned of the death on May 1. He continued his investigation and, evidently receiving advice from the district attorney's office about going forward, on June 4 mailed a citation for the homicide to the defendant, and a complaint issued on June 23.

The pertinent words of the citation statute appear at G. L. c. 90C, § 2, third par., as amended by St. 1986, c. 620, § 18:

"A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court

[1]These civil infractions were placed on file.

proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure. In such case the violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him at his residential or mail address or to the address appearing on his license or registration as appearing in registry of motor vehicles records. The provisions of the first sentence of this paragraph shall not apply to any complaint or indictment charging a violation of section twenty-four, twenty-four G or twenty-four L of chapter ninety, providing such complaint or indictment relates to a violation of automobile law which resulted in one or more deaths."

The defendant says this is a case of "sloth or sheer inattention" (*Commonwealth* v. *Perry*, 15 Mass. App. Ct. 281, 283 [1983]) on the part of the officer in furnishing the homicide citation and under the first quoted sentence of the statute the complaint should have been dismissed by reason of the delay without regard to whether the defense was prejudiced thereby. See *Commonwealth* v. *Marchand*, 18 Mass. App. Ct. 932 (1984); *Commonwealth* v. *Ryan*, 22 Mass. App. Ct. 970, 971-972 (1986). The third quoted sentence, however, negates the first and takes the sting out of the statute where the offense is vehicular negligent homicide.[2] The defendant tried to meet the point by arguing that the third sentence, added by St. 1986, c. 620, § 18, would create an illogical and artificial and therefore unconstitutional classification and should be disregarded in deciding the case. There is slim support for any such argument. The 1986 amendment reflects unease with such a precedent as *Marchand* which would ignore any question of prejudice to a defendant even in a death case. The draftsmen could take a cue from decisions which have recognized that, where an apparent vehicular violation causes injury that is seen to be serious, the violator is implicitly on notice that he or she is at risk of being charged (see *Commonwealth* v. *Pappas*, 384 Mass. 428, 431-432 [1981]; *Commonwealth* v. *Babb*, 389 Mass. 275, 283-284 [1983]): the nature of the injury serves in itself the general objective of the citation statute, described as "early advice to the offender about the violation being charged and whether he or she is to expect a complaint beyond a mere warning." *Commonwealth* v. *Perry*, 15 Mass. at 283.[3] Further, the draftsmen may have

---

[2]Also where death results from the commission of the motor vehicle offenses described in G. L. c. 90, §§ 24, 24L.

[3]The "no fix" objective of the citation statute, see *Commonwealth* v. *Pappas*, *supra* at 431, is irrelevant here.

responded to the consideration that police investigations into matters as grave as homicide are and ought to be done with particular care. These inquiries may properly take time and should not be carried out under the pressure of urgent deadlines. Finally, there may have been a thought of anomaly in forcing dismissal of such charges for delay of citation, when the initiation of criminal proceedings in homicides outside the field of motor vehicles is not put under any similar time limits. We conclude that the classification of the third sentence is not irrational, cf. *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743-745 (1986), and there is nothing in a possible contention that a defendant in Nadworny's position is by the provision deprived of fair notice or opportunity to be heard and present a defense.

It should be added that while Officer Jones was not markedly efficient in his investigation, the Commonwealth is able to make a plausible showing that he was at least not grievously delinquent in pursuing the case. It notes that he was conducting the investigation alone amid his other duties.

2. The videotape, offered as an attempted recreation of the event, had been prepared under the guidance of an expert in "accident reconstruction." The judge allowed a motion in limine to exclude it and adhered to the decision after much consideration during trial. In the future, there may be a case in this jurisdiction where a trial judge will be held to have committed error in excluding a reconstruction by videotape, but the present case does not qualify as a trailblazer. Despite what may well have been earnest efforts by the defense to reproduce faithfully the historical event, the videotape appeared intrinsically to take sides. Thus, as the Commonwealth indicates, the reenactment suggested that the western sun "blinded" the defendant to the approach of the bicyclist or placed the bicyclist in a dark field, although defense testimony was to the contrary; the respective speeds of the vehicles suggested in the videotape were fixed arbitrarily; the defendant's turn to the left toward Westland Street was not pictured as "sharp," or sharp enough, to conform to substantial testimony; and certain circumstances testified to as bearing on the accident were not pictured. The judge could reason that to admit a videotape in this condition of affairs would invite diversionary evidence on both sides about how faithful the representation was; but as a spectacle the videotape could make a strong impression on a jury, who might ignore its deficiencies. See McCormick, Evidence § 214, at 674-675 (3d ed. 1984). Whether to admit the videotape was at most a discretionary matter and the judge did not abuse his discretion in excluding it. See *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 173 (1983). Be it noted that the expert gave testimony, independent of the videotape, in considerable detail and with the help of photographic exhibits.

*Judgment affirmed.*

*James W. Rosseel* for the defendant.
*Sean J. Gallagher*, Assistant District Attorney, for the Commonwealth.