## COMMONWEALTH *vs.* MARY KENNEY.

No. 00-P-1010.

Suffolk. August 29, 2001. - July 26, 2002.

Present: LAURENCE, MASON, & BERRY, JJ.

*Practice, Criminal,* Citation for violation of motor vehicle laws, Dismissal, Sentence. *Motor Vehicle,* Citation for violation of motor vehicle law, License to operate.

The failure of police to issue a traffic citation in accordance with G. L. c. 90C, § 2, did not require the dismissal of indictments charging a defendant with certain motor vehicle offenses arising from a hit and run accident, where the statutory purpose of providing notice to the defendant of the potential charges against her was clearly satisfied, in that the defendant was aware of the prospect of prosecution immediately after the hit and run, as evidenced by the seriousness of the incident and the defendant's actions following the incident, including her flight from the scene, her statements to others concerning the incident, and her prompt engagement of counsel. [517-521]

This court concluded that a trial judge has the power to order, as a condition of probation for a defendant convicted of operating a motor vehicle so as to endanger in violation of G. L. c. 90, § 24(2)(*a*), that the defendant surrender her operator's license and not apply for a new one during her probationary term. [521-522]

INDICTMENTS found and returned in the Superior Court Department on June 26, 1996.

A motion to dismiss was heard by *E. Susan Garsh,* J., and the cases were tried before *Peter M. Lauriat,* J.

*Frances L. Robinson* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Commonwealth.

BERRY, J. One issue presented by this appeal involves whether the failure to issue a traffic citation in accordance with G. L. c. 90C, § 2, requires dismissal of indictments charging certain

motor vehicle criminal offenses,[1] notwithstanding that the statutory purpose of providing notice of potential charges was clearly satisfied in that the defendant was aware of the prospect of prosecution immediately after the hit and run. We hold that dismissal was not compelled. The other appellate issue concerns the sentence imposed on the driving to endanger conviction. We uphold the sentence.

1. *Procedural history.* A jury convicted the defendant of both leaving the scene of an accident after causing personal injury and driving recklessly or negligently so as to endanger. The defendant was sentenced to two years in the house of correction on the former conviction and, on the latter conviction, to two years on and after the first sentence. The second sentence was suspended, however, with the defendant to be placed on two years of probation subject to community service work, her participation in a drug and alcohol program, and the further condition that she surrender her driver's license and not apply for a new one. Both sentences were stayed pending appeal, on condition that the defendant not operate a motor vehicle.

2. *Factual background.* The relevant facts are not disputed by either party.[2] Near 9:00 P.M. on November 3, 1995, a car struck a woman walking in a crosswalk in Maverick Square in East Boston. The driver did not stop. The force of the impact thrust the victim forty-three feet forward. She suffered skull fractures,

---

[1] The original indictments charged five motor vehicle-related offenses: (1) assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A); (2) operating recklessly or negligently so as to endanger (G. L. c. 90, § 24[2][a]); (3) leaving the scene after causing personal injury (G. L. c. 90, § 24[2][a¹/₂][1]); (4) operating recklessly or negligently so as to endanger, while under the influence, and causing serious bodily injury (G. L. c. 90, § 24L[1]); and (5) operating while under the influence and causing serious bodily injury (G. L. c. 90, § 24L[2]). On the defendant's motion that the prosecution elect between the two operating under the influence offenses, one being a lesser included offense, the Commonwealth withdrew the lesser included offense in indictment (5) described above. The other indictment for operating to endanger while under the influence and causing serious injury resulted in a required finding of not guilty. The defendant was acquitted of the assault and battery by means of a dangerous weapon charge.

[2] We draw on facts from the findings of the motion judge who denied the motion to dismiss. However, because the facts are not disputed — and indeed are fully presented in the appellate briefs — we also draw on facts in the trial record which provide further detail and place certain events in context.

a broken neck and leg, and a fractured pelvis. As a result of the injuries, she succumbed to a stroke, and was rendered unable to talk or walk.

Eyewitnesses described the car as blue and driven by a woman. The police recovered a small black piece of plastic from the accident debris. Early the next morning, the police received an anonymous telephone call. The caller identified the defendant as the driver and stated that the defendant was driving a blue Mustang with a white top. Two days later, on November 6, an attorney engaged by the defendant called the police and requested a meeting. At this meeting, the defendant provided her name, address and date of birth, but no other information was forthcoming. Instead, counsel requested notice if the police developed probable cause to arrest the defendant.

The investigation continued. On November 8, 1995, a worker at the defendant's condominium complex informed the police that, several days earlier, a blue or grey vehicle had been parked in one of the defendant's assigned spaces. Having learned that one Cynthia Murphy received mail at the defendant's condominium, the police conducted a background check which revealed that Murphy drove a blue Mustang. The police located the Mustang. It had a cracked windshield and the hood bore marks and scrapes. The black plastic piece recovered at the scene fit a broken part of the front grille of the car. Evidence later established that the Mustang was leased to both Murphy and the defendant.

The police also received a second anonymous call.[3] The caller described a conversation between two women, Linda Howe and Maureen Sullivan, concerning an unnamed mutual friend in East Boston who, while driving, had hit and seriously injured a woman pedestrian. As a result of the call, the police interviewed Howe and Sullivan. Howe provided a full description implicating the defendant. According to Howe, on the day of the accident, the defendant was intoxicated when she came to Howe's

---

[3]There is some question when this call was received. At the hearing on the motion to dismiss, the call was referenced as occurring on November 28, 1995. The motion judge's findings refer to the date of the call as December 1, 1995. However, at trial in cross-examination of the witness Howe, the defense elicited that the call may have occurred on the afternoon of November 4. The time differential is not material to the issues presented.

home in Charlestown. The defendant was driving a red Toyota. Notwithstanding the defendant's condition, Howe and the defendant arranged to drive to East Boston so that the defendant could retrieve the Mustang that Murphy had been driving. When they arrived there, the defendant and Murphy had an argument. Murphy was not making payments on the lease for the Mustang, and the defendant remained liable under the lease. Murphy threw the keys to the Mustang at the defendant. The defendant then drove away in the Mustang and Howe drove the Toyota. The two were to meet back at Howe's house. Just after 9:00 P.M., the defendant arrived back at Howe's house. She was still intoxicated and was acting confused. The defendant told Howe that she thought she had hit a person or a tree while driving back, but had not stopped to confirm her suspicion. Howe and Sullivan, who was also then present, advised the defendant to notify the police. This she declined to do. According to Howe, the next day, the defendant saw a news report about the accident. Worried about what would happen if she were identified as the driver, the defendant, with Howe, went to a bank where the defendant withdrew $31,000 from her account.

By December 4, 1995, the police interviewed Howe and Sullivan and obtained their statements. The remaining investigation was also completed by the beginning of December, 1995. The Commonwealth concedes that, as of this date, there was sufficient evidence to issue a citation under G. L. c. 90C, § 2. No citation issued at that time, or at any point thereafter. In April, 1996, the Commonwealth presented the case to a grand jury and, in June, 1996, the indictments were returned.

3. *Failure to issue the citation.* The defendant moved to dismiss the indictments on the ground that the failure to issue a citation did not comport with the requirements of G. L. c. 90C, § 2. The motion judge found that dismissal was not warranted because the statutory purposes had been fulfilled. We agree.

General Laws c. 90C, § 2, as amended by St. 1985, c. 794, § 3, requires that a police officer

"record the occurrence of automobile law violations upon a citation, filling out the citation and each copy thereof as soon as possible and as completely as possible . . . . A

failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except [1] where the violator could not have been stopped or [2] where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or [3] where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure. In such case the violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him . . . ." (Enumeration added.)

The case law clearly defines the purposes of the statute:

"Two purposes underlie the citation requirements of G. L. c. 90C, § 2. The first purpose is apparent from the common name of the statute, the 'no-fix' law. The nature of traffic citations renders them uniquely suited to manipulation and misuse, and G. L. c. 90C, § 2, is intended to prevent such abuses by eliminating unreasonable or unnecessary delay. See 1965 Senate Doc. No. 839, at 2. The second purpose served by the statute is to afford prompt and definite notice of the nature of the alleged offense to the putative violator."

*Commonwealth* v. *Pappas*, 384 Mass. 428, 431 (1981). The defendant makes no contention that the "no-fix" ticket manipulation aspect of the statute is implicated. Rather, the defendant's principal claim rests upon the notice provision. The citation provisions of § 2 are aimed at providing notice of the potential violations and of whether a criminal complaint will issue. To that end, "[t]he statute . . . is designed to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs." *Commonwealth* v. *Gorman*, 356 Mass. 355, 357-358 (1969).

In this case, as of the date of the accident, the defendant's immediate flight from the scene meant that she "could not have been stopped," precluding the issuance of a citation; therefore, the first exception applied to that date. Then, at least up to December, 1995, additional time was needed "to determine the

nature of the violation or the identity of the violator." Therefore, the second exception applied through that date. The issue arises because, even after December, 1995, when the Commonwealth concedes there was probable cause to believe that the defendant was the traffic offender, no citation issued. Therefore, the defendant asserts, the indictments should have been dismissed.

A series of cases has addressed the effect of delay in issuing a citation. Those cases have not imposed a per se rule of dismissal, even though a citation did not issue in compliance with the statute. "[T]his court and the Appeals Court on numerous occasions have held that failure to comply with the statute is not fatal where the purposes of the statute have not been frustrated." *Commonwealth* v. *Babb*, 389 Mass. 275, 283 (1983). In making this determination, the cases have given weight to the following factors: whether the notice provisions of the statute have been met by other means, such as by an arrest[4]; whether knowledge is an essential element of the motor vehicle crime charged and is required to be proved at trial[5]; and whether the nature of the driving incident is so serious that the driver is deemed to be on notice. Regarding the last consideration, which has relevance to this case, it has been held that "[i]t is inconceivable that the defendant would be unaware of the seriousness of a situation in which his vehicle had crossed the center line of a public street and struck a pedestrian." *Commonwealth* v. *Pappas, supra* at 431-432. Here, the force of the impact, which occurred in a crosswalk, catapulted the pedestrian some forty feet forward, giving rise to major and irremediable injuries. As in *Pappas*, given the seriousness of the event, it is inconceivable that the defendant here was not aware of the prospect of potential criminal charges. "[T]he cases make clear

[4]While § 2 does not contain an express exception to the issuance of a citation whenever there is an arrest, the cases reasonably have added that gloss to the statute. "Nothing in the statute . . . suggests that such additional notice as is provided by a citation is necessary when an arrest occurs." *Commonwealth* v. *Gorman*, 356 Mass. at 358.

[5]In prosecutions where "knowledge of the wrongful character of the act is an essential element of the offense . . . a requirement of notice to alert an offender that an offense had been committed [under G. L. c. 90, § 24,] seems as superfluous as the necessity of issuing a citation after an arrest for a motor vehicle violation . . . ." *Commonwealth* v. *Giannino*, 371 Mass. 700, 704 (1977) (footnote omitted).

that the very seriousness of particular charges tends to minimize the importance of absolute observance of the procedures because, again, 'fix' is virtually excluded, *and notice is implicit.*" *Commonwealth* v. *Babb, supra* (emphasis added). Indeed, in this case, the notice was beyond implicit; rather, notice was explicit from the record. That the defendant was on notice that charges were likely to be levied against her following her flight from the accident scene is explicit and clear from her activities in the aftermath of the hit and run, including her admission to Howe and Sullivan that she believed she had hit someone, and her expressed fear of the consequences of her actions, illustrated by her withdrawal of $31,000 from the bank account. Moreover, the defendant's prompt engagement of counsel also reflects notice and the ability to begin to marshal a defense — indeed, defense counsel began such an undertaking two days after the incident.

The defendant contends that the prior case law involving delay in issuance of a citation is inapposite and that the only case involving the failure (not delay) in issuance of a citation resulted in reversal. On this point, the defendant cites *Commonwealth* v. *Carapellucci*, 429 Mass. 579 (1999), a case where no citation was issued, and the court reversed convictions for operating with a suspended license and leaving the scene of an accident. However, in doing so, the Supreme Judicial Court did not depart from the weight of authority developed or the rationale underlying the delay cases. Rather, the court expressly noted that *Carapellucci* was "not a case in which the serious injuries resulting from the traffic violation or the arrest of the defendant at the time of the incident put the defendant on notice of the potential charges against him and created an ineradicable record of the event." *Id.* at 581. The denial of the defendant's motion to dismiss the indictments in the instant case not only falls within this express qualifying condition in *Carapellucci*, but also is consistent with the rationale that "where an apparent vehicular violation causes injury that is seen to be serious, the violator is implicitly on notice that he or she is at risk of being charged . . . . [T]he nature of the injury serves in itself the general objective of the citation statute, described as 'early advice to the offender about the violation being charged and

whether he or she is to expect a complaint beyond a mere warning.' " *Commonwealth* v. *Nadworny*, 30 Mass. App. Ct. 912, 913 (1991), quoting from *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 281, 283 (1983).

Accordingly, we conclude that it "would be inconsistent with 'the express purpose stated by the statute, "namely, to cause violators of automobile laws to be brought uniformly to justice," ' . . . to hold that charges as serious as these must be dismissed" even though the objectives of the statute were satisfied. *Commonwealth* v. *Barbuto*, 22 Mass. App. Ct. 941, 943 (1986) (citation omitted). Put another way, the failure to comply with the citation requirement was not "fatal to the prosecution," *ibid.*, and the motion to dismiss the indictments was properly denied.[6]

4. *The defendant's sentence.* The defendant contends that her sentence for operating so as to endanger under G. L. c. 90, § 24(2)(*a*), was illegal because the judge ordered as a condition of probation that she surrender her license and not apply for a new one during the probationary term. This, she says, amounted to a license revocation and is contrary to the statute's placement of the power of license revocation exclusively with the registrar of motor vehicles. However, G. L. c. 90, § 24(2)(*b*), does not vest the registrar with exclusive authority. To the contrary, the statute provides that the registrar "shall *unless the court or magistrate recommends otherwise*, revoke immediately the license or right to operate of the person . . . convicted [under

---

[6]In 1986, the Legislature amended § 2, rendering the citation requirements inapplicable where the motor vehicle violation results in death, thereby "show-[ing] that, when the most serious of personal injuries is involved, the purposes of § 2 are made unimportant as against the public interest in the prosecution of such violators." *Commonwealth* v. *Cameron*, 416 Mass. 314, 317 (1993). As the Supreme Judicial Court analyzed the amendment, "[t]he fact that in 1986 the Legislature amended § 2 (St. 1986, c. 620, § 18), less than four years after our . . . opinion [in *Commonwealth* v. *Babb*, 389 Mass. 275 (1983)], without changing that section to reverse our interpretation of § 2, warrants the conclusion that the Legislature accepted our interpretation." *Commonwealth* v. *Cameron*, *supra* at 317 n.4. The *Babb* interpretation, which the court found had been accepted in connection with the amendment, was described as follows: "The *Babb* case stands for the proposition that, assuming the notice and abuse prevention purposes of § 2 are met, the apparent seriousness of the accident itself may justify a refusal to dismiss a complaint when an officer failed to issue a citation seasonably." *Id.* at 317.

paragraph (*a*) or (*a*½) of subdivision (2) of § 24]" (emphasis added). G. L. c. 90, § 24(2)(*b*), as amended through St. 1991, c. 460, § 3. The statute does not "limit[] the power currently held by trial judges to order, as a condition of probation, that a defendant surrender his operator's license and refrain from operating a motor vehicle." *Brach* v. *Chief Justice of the Dist. Ct. Dept.*, 386 Mass. 528, 539 (1982). The particular probation conditions fell well within the " 'great latitude' [judges have] in imposing conditions of probation." *Commonwealth* v. *Pike*, 428 Mass. 393, 402 (1998). The limitations on the defendant's privilege to operate a motor vehicle comport with "[t]he principal goals of probation," rehabilitation of the defendant and protection of the public, as well as the "[o]ther goals of probation[,] includ[ing] punishment, deterrence, and retribution." *Id.* at 403. Contrary to the defendant's claim, her sentence was not an illegal one.[7]

*Judgments affirmed.*

---

[7] "[O]ne's right to operate a motor vehicle is a privilege voluntarily granted," and is not a constitutional right. *Luk* v. *Commonwealth*, 421 Mass. 415, 423 (1995). See *Roberto* v. *Department of Pub. Util.*, 262 Mass. 583, 588 (1928) ("The certificate [to operate motor vehicles on specified route] was a privilege. It was neither a contract nor property, and its revocation deprived the petitioner of no vested rights").