NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-557                                          Appeals Court

COMMONWEALTH  vs.  RICHARD O'LEARY.

No. 16-P-557.

Norfolk.     August 16, 2017. - September 22, 2017.

Present:  Green, Vuono, Meade, Agnes, & Desmond, JJ.[1]


Motor Vehicle, Citation for violation of motor vehicle law,
     Operating under the influence.  Practice, Criminal,
     Citation for violation of motor vehicle laws, Dismissal.
     Notice.



     Indictments found and returned in the Superior Court
Department on September 23, 2014.

     A motion to dismiss was heard by Beverly J. Cannone, J.


     Pamela Alford, Assistant District Attorney, for the
Commonwealth.
     Douglas T. Babcock for the defendant.


_____

     [1] This case was initially heard by a panel comprised of
Justices Green, Agnes, and Desmond.  After circulation of the
opinion to other justices of the Appeals Court, the panel was
expanded to include Justices Vuono and Meade.  Following
expansion of the panel, the court ordered a rehearing of the
case before the expanded panel.  See Sciaba Constr. Corp. v.
Boston, 35 Mass. App. Ct. 181, 181 n.2 (1993).

GREEN, J.  We are called upon again to consider the circumstances in which the failure to issue a citation at the scene of a motor vehicle infraction does not compel the dismissal of resulting criminal charges.  The Commonwealth appeals from an order of the Superior Court, dismissing a multiple-count indictment against the defendant on the ground that the police failed to make a timely delivery of the citation pursuant to G. L. c. 90C, § 2.[2]  For the reasons that follow, we reverse.

Background.  We summarize the judge's findings of fact, which we accept absent clear error.  On the night of April 19, 2014, the defendant was involved in a motor vehicle accident on Route 3 in Braintree.  The Jeep Cherokee he was driving left the highway, hit an exit sign, and rolled over five times.

State police Trooper Jared Gray responded to the accident scene.  The defendant and a woman, Patricia Murphy, were covered in blood and broken glass.  Gray observed the defendant and Murphy being treated by emergency personnel; both eventually were taken to South Shore Hospital by ambulance for treatment.  Trooper Gray spoke to both the defendant and Murphy briefly

---

[2] The defendant was charged with various motor vehicle offenses, including (1) operating a motor vehicle while under the influence of alcohol (OUI), G. L. c. 90, § 24L(1); (2) OUI, subsequent offense, G. L. c. 90, § 24(1)(a)(1); (3) negligent operation of a motor vehicle, G. L. c. 90, § 24(2)(a); and (4) several charges involving operating with a suspended or revoked license in violation of G. L. c. 90, § 23.

before they were taken to the hospital; at that time, each claimed to have been a passenger in the vehicle.

From his observations at the scene, Trooper Gray believed the parties had suffered serious injuries.[3]  He followed the ambulances to the hospital.  When he arrived at the emergency room, he left his citation book in his patrol vehicle.  He spoke first with Murphy.  She appeared to be intoxicated, but seemed to understand his questions.  As she had done at the accident scene, she told Gray that she had been a passenger in the vehicle.  Gray next spoke with the defendant.  Gray noticed that his eyes were glassy and his speech was slurred.  He also noticed the odor of alcohol coming from the defendant.  The defendant told Gray he had had "a couple of beers."  The defendant initially repeated his earlier statement that he had been a passenger in the vehicle, but then admitted to having been the driver.  At the time of the accident, the defendant was on probation for operating under the influence of alcohol, subsequent offense.  His license was suspended and he was not legally permitted to drive.  Gray gave Miranda warnings to the defendant, after which the defendant repeated that he had been the driver.  Gray told the defendant he would be receiving "a criminal summons in the mail."  Gray's intent was to complete

---

[3] There are no medical records pertaining to the injuries suffered by the defendant or Murphy in the record before us. However, Murphy testified that she suffered several broken ribs.

his investigation, file his report with his supervisor, and then send a citation to the defendant.  After filing his report with his supervisor, Gray waited nine days for the report to be approved.  Once it was approved on April 28, 2014, it was mailed to an address on file with the State police.  Due to an incorrect zip code, however, it was another five or six weeks before the defendant received the citation in the mail.

The judge credited Murphy's testimony that she believed that this was "merely a car accident and that there would be no charges arising from it," even though she had suffered serious physical injuries.[4]  However, the judge also found that, for several weeks after the accident, Murphy and the defendant waited for something in the mail "or for some sort of contact" from the State police regarding what had happened.  After the accident and before he received the citation, the defendant did not hire an attorney or take any steps to defend a criminal case.

Discussion.  General Laws c. 90C, § 2, provides in pertinent part that:

> "A failure to give a copy of the citation [for an automobile laws violation] to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the

---

[4] In addition to breaking several ribs, Murphy lost consciousness at one point and appeared to be in shock; she testified that she feared she would die.  Upon her arrival at the hospital, Murphy was put in the trauma unit.

violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure.  In such case the violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him at his residential or mail address or to the address appearing on his license or registration."

Though the statute is applied strictly in those circumstances to which it is applicable, see Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999), it is subject to certain explicit statutory exceptions, as construed through a line of decisional law.

The statute includes three explicit exceptions.[5]  "By its terms, § 2 excuses the need to deliver a copy of the citation at the time and place of the violation in three circumstances: (1) when 'the violator could not have been stopped'; (2) when 'additional time was reasonably necessary to determine the nature of the violation or the identity of the violator'; and (3) 'where the court finds that a circumstance, not inconsistent with the purpose of this section . . . , justifies the

---

[5] In addition to the explicit exceptions set forth in the statute itself, our cases have added an exception for cases in which an arrest occurs.  See Commonwealth v. Kenney, 55 Mass. App. Ct. 514, 519 n.4 (2002), quoting from Commonwealth v. Gorman, 356 Mass. 355, 358 (1969) ("Nothing in the statute . . . suggests that such additional notice as is provided by a citation is necessary when an arrest occurs").

failure.'" Commonwealth v. Correia, 83 Mass. App. Ct. 780, 783-784 (2013). It is the Commonwealth's burden to establish that a statutory exception applies. See Commonwealth v. Mullins, 367 Mass. 733, 734-735 (1975).

The purpose of the statute, sometimes referred to as the "no-fix" law, see Commonwealth v. Cameron, 416 Mass. 314, 316 (1993), is to prevent the "manipulation and misuse" of traffic citations, and "to afford prompt and definite notice of the nature of the alleged offense to the putative violator." Commonwealth v. Pappas, 384 Mass. 428, 431 (1981). "The susceptibility of 'traffic tickets' to unequal and arbitrary disposition at the hands of traffic officers, and the requirement of prompt notice to the offender, reflect the normally fleeting and nonserious nature of most traffic infractions. . . . The risk that a putative defendant will remain unaware of a transient traffic offense and will be unprepared to defend against it unless the incident is 'called immediately to [his] attention' has little relevance when applied to more serious crimes." Ibid. (citations omitted). Moreover, in cases involving an offense (such as the charge in the present case of operating with a suspended license) in which "knowledge of the wrongful character of the act is an essential element of the offense. . . . [A] requirement of notice to alert an offender that an offense had been committed seems as

superfluous as the necessity of issuing a citation after an arrest for a motor vehicle violation." Commonwealth v. Giannino, 371 Mass. 700, 704 (1977). See Commonwealth v. Babb, 389 Mass. 275, 284 (1983).

We agree with the Commonwealth that the present case fits within the third statutory exception, as illustrated by the similar cases of Commonwealth v. Kenney, 55 Mass. App. Ct. 514 (2002), and Commonwealth v. Moulton, 56 Mass. App. Ct. 682 (2002). In both cases, we concluded that criminal charges need not be dismissed in circumstances where the violation resulted in serious injuries and the purposes of the statute otherwise were met. In Commonwealth v. Moulton, the police officer advised the defendant orally while in the hospital that she would be criminally charged. As in Moulton, the serious nature of the accident and injuries in the present case, causing an "ineradicable record of the event," Commonwealth v. Kenney, supra at 520, coupled with the officer's oral notice to the defendant in the hospital that he would be charged, sufficed to put the defendant on notice that criminal charges would follow and met the purposes of the statute.[6] In Commonwealth v. Kenney,

--------

[6] We note that the Superior Court judge discounted the effect of Trooper Gray's oral notice to the defendant, observing that at the time Trooper Gray informed the defendant that he would be receiving a summons in the mail, the defendant was boarded and immobilized while he received treatment for his injuries at the hospital, and consequently "[t]his court is not

<u>supra</u>, we affirmed the denial of a defendant's motion to dismiss, even though no citation ever issued, based on the serious nature of the accident and the defendant's awareness that criminal charges would follow.

We recognize that the delay in issuance of a citation in the present case was nine days, rather than one, as in <u>Moulton</u>, and that there does not appear to have been any strong reason for the delay.[7],[8]  However, the case otherwise is entirely in line with the circumstances of <u>Moulton</u>, in which "there was no

---

satisfied that the defendant was put on notice through the statement of Trooper Gray that the defendant would receive a summons."  We consider that conclusion to be inconsistent with the recognition appearing in our cases that serious injuries resulting from a motor vehicle accident resulting from operation of a motor vehicle while under the influence of alcohol alone may suffice to constitute "implicit" notice.  See <u>Commonwealth</u> v. <u>Moulton</u>, 56 Mass. App. Ct. 682, 685 (2000); <u>Commonwealth</u> v. <u>Babb</u>, 389 Mass. 275, 283 (1983).  See also <u>Commonwealth</u> v. <u>Cameron</u>, 416 Mass. 314, 316 (1993).  We note as well that the defendant's circumstances while at the hospital posed obvious practical impediments to in-hand delivery of a written citation to him while he was strapped to a backboard and receiving treatment.  See, e.g., <u>Commonwealth</u> v. <u>Perry</u>, 15 Mass. App. Ct. 281, 283 (1983).

[7] We consider the additional delay caused by the use of an incorrect zip code in mailing the citation to be relatively inconsequential in the circumstances of this case.  The "no-fix" purpose of the statute was served by the recording and issuance of the citation itself; the subsequent delay factors only into an assessment of possible prejudice to the defendant who, as previously observed, is considered under our cases to have been aware of the seriousness of the incident and the concomitant likelihood that criminal consequences would follow.

[8] We do not condone Trooper Gray's election to await review and "approval" of his report by his supervisor before issuing a citation.

manipulation or misuse of the citation, and [Trooper Gray] notified the defendant as soon as he had completed his interview of [him] at the hospital that a citation would be issued."  56 Mass. App. Ct. at 685.

The order dismissing the indictment is reversed, and the indictment is reinstated.

So ordered.

AGNES, J. (dissenting, with whom Desmond, J., joins). The question before us is whether the Commonwealth met its burden of proving compliance with G. L. c. 90C, § 2, despite the fact that Trooper Gray did not give the defendant a citation at the scene of the violation, at the hospital following the interviews he conducted, or as soon as possible thereafter. In fact, it took more than six weeks after the date of the violation for the defendant to receive a citation.

The Commonwealth relies exclusively on a specific exception in § 2 which excuses the duty to deliver the citation to the violator at the time and place of the violation where "the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure." In concluding that the Commonwealth met its burden to establish that this exception applies, the majority, in my view, disregards the judge's findings of fact, disregards other language in the statute that requires the citation to be written "as soon as possible" after the violation, and fails to stay within the bounds of prior decisions. Accordingly, I respectfully dissent.

1. <u>The defendant did not "receive" oral notice that he would be charged criminally</u>. The judge conducted an evidentiary hearing and made findings of fact and rulings of law. In such

cases, we accept the judge's subsidiary findings of fact unless they are clearly erroneous. We give substantial deference to the judge's ultimate findings and rulings. See, e.g., Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 50 (2014). In one important respect, the majority opinion veers off course from this standard of review. In an effort to bring this case closer to Commonwealth v. Moulton, 56 Mass. App. Ct. 682 (2002), the majority relies on testimony by Trooper Gray that, while at the hospital, he informed the defendant that he would be receiving "a criminal summons in the mail." Ante at    . Although the judge, as the finder of fact, credited this testimony, she added an important qualification that undermines the majority's reliance on it:

> "Trooper Gray testified credibly that the defendant and passenger appeared to be intoxicated and seriously injured. This court credits his testimony that he informed the defendant that he would receive a summons. However, at the time the trooper told the defendant this information, the defendant was boarded and immobilized while he received treatment for his injuries at the hospital. This court is not satisfied that the defendant was put on notice through the statement of [T]rooper Gray that the defendant would receive a summons."

This is a statement by the finder of fact about the weight of testimonial evidence. It is settled law that the weight of the evidence is a matter for the fact finder, not a question of law that we have authority to review de novo on appeal. See Commonwealth v. Murphy, 362 Mass. 542, 550 (1972) (Hennessey,

J., concurring).[1]  Thus, while it is accurate to say that Trooper Gray made a statement in the defendant's presence that he would receive a criminal summons in the mail, it is not accurate to say that the defendant received oral notice that criminal charges would be sought, i.e., it is not accurate to say that the defendant <u>understood</u> that criminal charges would be sought. Contrast <u>Commonwealth</u> v. <u>Moulton</u>, <u>supra</u> at 683 (after interviewing defendant at hospital following motor vehicle accident, police officer stated "he would be mailing her a citation for 'operating under the influence of alcohol and a couple of other charges;'" no indication that defendant did not understand such notice).

2.  <u>Section 2 does not excuse a delay in the issuance of a citation for reasons of administrative convenience</u>.  Let us assume that the Commonwealth met its burden of proving that, due to the serious nature of the accident and the injuries suffered by the defendant and his passenger, Patricia Murphy, "a

---

[1] In only very limited circumstances not applicable here, the Supreme Judicial Court and trial judges may exercise discretion to consider the weight of the evidence. See G. L. c. 278, § 33E (special responsibility assigned to Supreme Judicial Court in capital cases); Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979) (authority limited to trial judge in criminal cases after discharge of jury); Mass.R.Crim.P.30, as appearing in 435 Mass. 1501 (2001) (authority limited to trial judge to exercise discretion to allow motion for new trial in criminal cases); Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974) (authority limited to trial judge to exercise discretion to allow motion for new trial in civil cases).

circumstance, not inconsistent with the purpose" of § 2 "justifies the failure" to issue a citation at the time and place of the violation. Section 2 nevertheless imposes a separate and distinct requirement that, in such a circumstance, a citation must be issued "as soon as possible after the violation." Even if it was reasonable for Trooper Gray to return home without having written a citation after conducting the hospital interviews of the defendant and Murphy, no justification is offered for the ensuing nine-day delay. Contrast Commonwealth v. Correia, 83 Mass. App. Ct. 780 (2013) (off-duty trooper who did not have his citation book with him complied with § 2 by orally informing defendant that he would be charged with criminal violations, followed by delivery of citation at end of trooper's next shift); Commonwealth v. Russo, 30 Mass. App. Ct. 923 (1991) (police complied with § 2 by giving defendant oral notice at hospital that he would be charged criminally and by leaving copy of citation with his clothes on hospital gurney).

Here, the majority concedes, as it must, that there was "no strong reason for the delay" in issuing a citation to the defendant. Ante at        . It is more accurate to say, I

submit, there was no <u>valid</u> reason for the delay.[2]  Indeed, the

motion judge found that the delay was "inexplicabl[e]."

There is nothing in G. L. c. 90, § 2, or our precedents

that authorizes a delay in the issuance of citation for the

administrative convenience of the police.  See, e.g.,

<u>Commonwealth</u> v. <u>Roviaro</u>, 32 Mass. App. Ct. 956 (1992).[3]  We now

have a new rule anchored by the majority in the statute, but

nowhere to be found in the text of the statute.  Whenever there

is a "serious" motor vehicle accident in which there are

"injuries," the majority holds that the investigating officer

may delay the decision to issue a citation for some

indeterminate period of time even though the violator did not

flee, his identity is known, and no additional time is required

to determine the nature of the charges.  If a nine-day delay is

acceptable, what about a twelve-day, twenty-day, or thirty-day

---

[2] In her thorough memorandum of decision, the judge wrote
that "[t]he defendant was present at the scene of the accident
and Gray completed his investigation into the nature of the
violation and the identity of the violator by the time he left
South Shore Hospital.  There was no indication at the
evidentiary hearing that further investigation was done and it
does not appear that additional time was necessary to determine
the nature of the violation or the identity of the violator."

[3] In addition, contrary to the Commonwealth's claim, the
remainder of the delay (five or six weeks) also is attributable
to the Commonwealth.  Trooper Gray testified that the zip code
used when the citation was mailed to the defendant on April 28,
which resulted in its going to Quincy instead of to the
defendant's address in Braintree, was obtained from State police
records.

delay?  It would not surprise me if able and conscientious judges applying this standard reach different results in similar cases, which is contrary to the statute's explicit goal of establishing a "uniform" system.

Apart from the goal of ensuring that a violator receives timely notice that he will be charged criminally, § 2 is designed to prevent the corrupt manipulation of the citation process.  If a violator is arrested, an ineradicable record is made of the charges, and any attempt to manipulate or corrupt the process will likely come to light.  But the new rule established by the majority leaves open the potential for corruption before any record is made of what charges, if any, will be sought.  Every day that a police officer delays the issuance of a citation without justification is a day during which someone may attempt to improperly influence the decision whether charges will be brought or the nature of those charges.[4]

---

[4] This is why the Legislature dispensed with any requirement that the defendant demonstrate prejudice when there is a failure to comply with § 2.  In Newton Police Assn. v. Police Chief of Newton, 63 Mass. App. Ct. 697, 699-700 (2005), we explained the history of the statute:

> "Chapter 90C was inserted in the General Laws by St. 1962, c. 789, § 2. Section 2 of c. 90C continued the earlier practice (under G. L. c. 90, § 27, as appearing in St. 1961, c. 592) that the police officer who witnessed a traffic offense would record the violation on a citation form and submit it to police headquarters.  Within three days from receipt of the citation, the police chief or a designated officer of at least sergeant grade would decide

By overlooking the nine-day delay that occurred in this case while Trooper Gray's report was reviewed by a superior officer, the majority has created a slippery slope in place of the statute's objective standard.

Furthermore, the majority's reasoning that an unjustified nine-day delay is inconsequential runs afoul of the settled principle that a statute must be construed "so that effect is given to all its provisions, so that no part will be inoperative or superfluous."  Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998), quoting 2A B. Singer, Sutherland Statutory Construction § 46.06 (5th ed. 1992).  See

---

whether to proceed by way of a written warning, a court complaint,[footnote omitted] reference to the Registry of Motor Vehicles, or voiding the citation.  In 1965, concerned by the 'opportunity for subsequent maneuvering or pressure' afforded by the three-day period, then-Governor John A. Volpe, by special message to the Legislature, proposed a 'no-fix' traffic ticket bill.  1965 Senate Doc. No. 839.  The object of the bill was to require, as a general rule, that the decision to issue a citation (in effect an application for a District Court complaint) be made by the police officer at the time and place of the violation. The crux of the Governor's draft legislation lay in this sentence: 'A failure to give the original of the citation to the offender at the time and place of the violation shall constitute a bar to prosecution for such offense, except where the violator could not have been stopped, or where some other circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure.'  1965 Senate Doc. No. 839, Appendix A.  That sentence, as slightly amended in committee, remains the crux of G. L. c. 90C, § 2, in its present form."

Commonwealth v. McCaughey, 9 Gray 296, 297 (1857) (this is "an anciently established rule"). By focusing solely on whether the defendant should have been on notice that criminal charges were likely to follow, the majority disregards the statute's goal of eliminating corrupt manipulation of citations and renders superfluous the statute's separate requirement that the citation must be issued "as soon as possible."[5]

3. The majority opinion is inconsistent with judicial precedents. The majority relies principally on two prior cases, Commonwealth v. Kenney, 55 Mass. App. Ct. 514 (2002), and

---

[5] In statutory interpretation, "[n]one of the words of a statute is to be regarded as superfluous." Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy., 352 Mass. 617, 618 (1967), quoting from Bolster v. Commissioner of Corps. & Taxation, 319 Mass. 81, 84-85 (1946). A court is not authorized to create an exception to the plain language of a statute to ameliorate what appears to be a harsh result. See Ocean Spray Cranberries, Inc. v. State Tax Commn., 355 Mass. 592, 597 (1969). The Legislature revised G. L. c. 90, § 2, to address one such harsh result. In Commonwealth v. Marchand, 18 Mass. App. Ct. 932 (1984), the vehicle operated by the defendant struck another vehicle in an intersection. The investigating police officer examined the scene, and on the following day, after learning that the operator of the other vehicle had died, delivered a citation to the defendant for operating to endanger. Approximately forty-one days later, the police officer issued a second citation to the defendant for vehicular homicide. The record indicated that delay was not justified by the need to conduct an additional investigation. This court upheld the judge's dismissal of the homicide charge. Ibid. Two years later the Legislature revised the statute and effectively overruled Marchand. See St. 1986, c. 620, § 19 (amending § 2 and making the requirement of a citation inapplicable in cases in which the violation results in one or more deaths). See Commonwealth v. Nadworny, 30 Mass. App. Ct. 912, 914 (1991).

Commonwealth v. Moulton, 56 Mass. App. Ct. 682 (2002), that are readily distinguishable. In Moulton, at approximately 10:45 P.M. on the night in question, the defendant crashed her vehicle into a wall. The investigating officer made observations of the scene and was able to interview the defendant before she was taken by ambulance to the hospital. There, the investigating officer advised her of her Miranda rights, conducted a further interview, and concluded that she should be charged criminally. The officer informed her that he needed to check some things, but that she would receive a citation for "operating under the influence of alcohol and a couple of other charges" in the mail. Id. at 683. The officer returned to the police station. After reviewing an ordinance and conferring with his sergeant, he wrote a report, prepared the citation, and mailed it to the defendant. There was no question about whether the defendant received oral notice at the hospital that she would be charged criminally. In addition, the officer mailed the citation to the defendant only hours after giving her oral notice that criminal charges would be sought.

Similarly, in Commonwealth v. Kenney, supra, the defendant was operating a vehicle that struck a pedestrian in a crosswalk, causing the victim to be launched into the air, landing forty-three feet forward of the point of impact. 55 Mass. App. Ct. at 515. "She suffered skull fractures, a broken neck and leg, and

a fractured pelvis. As a result of the injuries, she succumbed to a stroke, and was rendered unable to talk or walk." Id. at 515-516. The day following the accident, the police received an anonymous telephone call identifying the defendant as the driver. Two days later, an attorney brought the defendant to the police, but there was no admission of fault. It took one month for the police to obtain statements from witnesses and physical evidence that indicated the defendant had operated the vehicle that struck the victim and was under the influence of alcohol at the time. Id. at 516-517. However, citations were not served on the defendant. Instead, four months later, the case was presented to a grand jury, which returned indictments against the defendant. Id. at 517.

In rejecting the defendant's argument that G. L. c. 90C, § 2, required that the charges be dismissed, this court reasoned that several factors provided assurances that both the no-fix and notice objectives of the statute were not compromised. First, there was evidence that, shortly after the accident, the defendant made admissions to third parties that she believed she had hit someone. Second, the defendant withdrew $31,000 from her bank account, which was regarded as evidence that she feared the consequences of her actions. Third, this court noted that the defendant's "prompt engagement of counsel also reflects notice and the ability to begin to marshal a defense -- indeed,

defense counsel began such an undertaking two days after the incident."  55 Mass. App. Ct. at 520.  In the present case, by contrast, the judge found that the defendant did not hire an attorney or take any steps to prepare to defend a criminal case promptly after the accident.  The judge found that Murphy, who had been living with the defendant for several years at the time of these events, believed that this was "merely a car accident and that there would be no charges arising from it," even though Murphy had sustained serious injuries as a result of the accident.  The judge also found that for several weeks after the crash, Murphy and the defendant waited for something in the mail "or for some sort of contact" from the State police regarding what had happened.[6]

---

[6] In a case following the seminal decisions in Commonwealth v. Pappas, 384 Mass. 428 (1981), and Commonwealth v. Babb, 389 Mass. 275 (1983), the Supreme Judicial Court described the type of injury that would give rise to the presumption of notice in the absence of a citation being issued as "life-threatening." In Commonwealth v. Cameron, 416 Mass. 314 (1993), the vehicle operated by the defendant struck and seriously injured a boy on a bicycle.  The defendant was identified as the operator at the scene.  The police officer completed his investigation the following day and concluded that the defendant had been speeding and had crossed the solid double yellow line before striking the boy.  Two days then passed without a citation being issued.  On the fourth day following the accident, the officer informed the defendant that he would be cited for operating to endanger and other charges, and the citation issued that day.  A divided panel of this court affirmed the lower court's decision dismissing the charges.  Commonwealth v. Cameron, 34 Mass. App. Ct. 44 (1993).  On further appellate review, the Supreme Judicial Court reached a different result and ordered the charges reinstated.  The court stated that, "[b]ecause there was

The majority's new standard cannot be squared with prior precedents.  For example, in Commonwealth v. Mullins, 367 Mass. 733, 735 (1975), criminal charges were dismissed because the citation was mailed to the defendant nineteen days after the violation.  The court noted that the defendant was stopped and identified by a police officer at the scene of the accident, and attributed the delay to an "unexplained mistake."  Id. at 736. In Commonwealth v. Burnham, 90 Mass. App. Ct. 483 (2016), we upheld a judge's decision to dismiss an indictment for operating under the influence of intoxicating liquor (OUI) in circumstances in which a citation was not issued to the defendant until four and one-half months after the police concluded their investigation.  The defendant was the operator and sole occupant of his vehicle, which was involved in a serious, single-vehicle accident.  The defendant was injured and unresponsive when taken from the scene by ambulance to the hospital.  The police did not detect any signs of alcohol intoxication from their observations of the defendant at the

---

an obvious, life-threatening injury in this case and no purpose of § 2 is being thwarted, and because the police were not seriously deficient or negligent in their handling of the matter, we conclude that there was justification for excusing the three-day delay in issuing the citation."  416 Mass. at 317-318 (emphasis added).  In the present case, by contrast, there was no effective oral notice to the defendant, no evidence that either the defendant or Murphy suffered life-threatening injuries, and a delay in receipt of the citation that extended to several weeks.

scene, and they did not go to the hospital.  The defendant was promptly cited for operating with a suspended license and for a marked lanes violation.  In dismissing the subsequent OUI charge, the judge concluded that the delay was not excused under any of the exceptions set forth in § 2, and that the defendant was not put on sufficient notice that an OUI charge might follow based on the other criminal charge and the nature of the injuries he suffered.  See Commonwealth v. Riley, 41 Mass. App. Ct. 234 (1996).  See also Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999) (noting that when there is violation of § 2, criminal charges must be dismissed "regardless of whether the defendant was prejudiced by the failure").

For these reasons, I believe we are no less constrained than the judge below to follow § 2 in this case with the result that the order dismissing the criminal charges should be affirmed.[7]

---

[7] Issues like the one we address in this case about the proper interpretation and application of G. L. c. 90C, § 2, arise frequently in the trial court and regularly at the appellate level.  The principal objective of the law was to "close loopholes" which allowed undue pressure to be brought on police officers assigned to traffic enforcement to dissuade them from enforcing traffic violations.  See 1965 Senate Document No. 839.  In recent years, the seriousness of the criminal law violations that are subject to the requirement of a citation under § 2 has grown, resulting in more complaints and indictments in the District and Superior Courts.  Simultaneously, the application of the statute has been narrowed by an amendment excluding from its scope cases in which a motorist causes a death.  By case law, the statute does not

apply to violators who are arrested.  The time may have come for the Legislature to again review the parameters of the citation requirement in certain categories of criminal cases arising from the use of automobiles.